UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSCOE MARTIN, 204375,

     Petitioner,

v.

WILLIE O. SMITH,

     Respondent.

_____

CASE NO. 1:17-cv-582

HON. JANET T. NEFF

MAG. ELLEN S. CARMODY

**ANSWER IN OPPOSITION TO PETITION FOR WRIT OF
HABEAS CORPUS**

# TABLE OF CONTENTS

Introduction ......................................................................... 1

    Statements in Compliance with Habeas Rule 5(b) .......................... 4

        A.    Statute of Limitations ................................................. 4

        B.    Exhaustion .................................................................. 4

        C.    Procedural Default ..................................................... 4

        D.    Non-retroactivity Doctrine ......................................... 4

Statement of the Case ......................................................... 5

        A.    Trial Facts ................................................................. 5

        B.    Procedural History ..................................................... 8

Standard of Review Pursuant to AEDPA ............................. 12

Argument ......................................................................... 19

I.    Habeas relief is not warranted on Martin's sufficiency claim because he cannot show the Michigan Court of Appeals' ruling was a malfunction, let alone an extreme one .................... 19

II.    Habeas relief is not warranted on Martin's claim regarding his right to present a defense. ........................................... 30

III.    Habeas claim is not warranted on Martin's claims alleging sentencing error .............................................................. 44

IV.    Martin's remaining claims do not warrant habeas relief because they are procedurally defaulted and lack merit. Martin also is not entitled to an evidentiary hearing. .................. 50

Conclusion ....................................................................... 65

Relief .............................................................................. 69

Certificate of Service ........................................................ 70

i

## INTRODUCTION

Petitioner Roscoe Martin—while serving a 50 to 76 year prison sentence for a 1989 second-degree murder conviction in the Michigan Department of Corrections (MDOC)—sent two letters to a corrections officer threatening to accuse her of criminal activity unless she paid an attorney $10,000.  The evidence against Martin was strong and included DNA evidence connecting him to the envelopes and testimony that Martin had previously sent this corrections officer a letter making accusations against her.  As result of his Marquette County jury conviction of extortion, MCL 750.213, the State now holds Martin in custody in the MDOC.  In November 2013, the trial court sentenced Martin, as a second habitual offender, to 7 to 30 years in prison, to be served consecutively to his 50 to 76 year sentence that he was serving when the extortion occurred.

Martin commenced this action under 28 U.S.C. § 2254 by filing a petition with this Court.  The State understands the petition[1] to be raising the following claims:

---

[1] Martin filed a previous habeas petition in this Court, which the Honorable Robert J. Jonker dismissed, in an order dated January 10, 2017, under Rule 4 because it contained unexhausted claims.  *Martin v.*

I.     [Martin's] conviction should be overturned because there was insufficient evidence at trial to prove [Martin] guilty of the crime.

II.    The trial court denied [Martin] a fair trial and his due process rights by denying to allow the hiring of experts to prove the extortion letters were not made on [Martin's] typewriter and the letters had not gone through the mail room; and the trial court forbidding [Martin] to call of number of MDOC witnesses.

III.   [Martin's] sentence was invalid because it was based on inaccurate information, i.e., improper scoring of the legislatively imposed sentencing guidelines, use of an incorrect burden of proof and insufficient facts; therefore his due process rights are violated.

IV.    Whether correctly scoring the guidelines would require resentencing.

V.     [Martin's] conviction should be overturned because there was insufficient credible evidence at trial to prove [Martin] guilty of the crime and the trial attorney's incompetence failing to familiarize himself with the police report, preliminary pretrial transcripts before trial, to properly and effectively prepare my defense and investigate to prove the State's witnesses were perjuring themselves and the judge and prosecutor knew and allowed it into records as if it was fact in front of my jury at trial violating my due process.

---

*Smith*, 1:16-cv-1315. The petition before this Court, filed in June 2017, does not appear to contain any exhausted claims.

The State also notes that at the time this answer was filed, the State had not yet received all of the Rule 5 material from the state trial court. When the State receives this material it will file it with this Court as supplemental Rule 5 material.

VI.   The trial court denied me a fair trial and violated all of my state and federal constitutional rights by denying this jury to review all of the evidence excluded and Lincoln Marshall's entire testimony included with mine . . . included with the Michigan State Police report authored by Detective/Sgt. Todd Johnston and the other State witnesses' testimony which would have casted doubt on their credibility and would have resulted in a not guilty verdict.

VII.  [Martin] is entitled to a *Ginther* hearing, *Franks* hearing, and evidentiary hearing because of the many procedural, plain, and structural errors committed by three separate attorneys, the judge and prosecutor; my trial attorney failed to effectively protect my state and federal constitutional rights as well as two separate judges and two other prosecutors at preliminary, pretrial and at trial knowingly allowed perjured testimony that's part of records that's not fact in accord with preponderance of real facts that [were] excluded, the prosecutor failed to discover upon request and acted in bad faith and conducted malicious prosecution and prosecutorial misconduct and the judge failed to abide by cannon laws 1, 2, and 3, which is judicial misconduct and my three separate lawyers were ineffective, cases are dismissed, reversed and remanded for such.

Should the Court interpret the petition to be raising different claims, the State requests an opportunity to file a supplemental pleading. The State now answers the petition and requests that it be denied.[2]

---

[2] To the extent that Martin failed to raise any other claims that he raised in the state courts, those claims are now abandoned. *See Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (holding that an

## STATEMENTS IN COMPLIANCE WITH HABEAS RULE 5(b)

With respect to the bars that preclude habeas review, the State asserts the following in conformance with Habeas Rule 5(b):

### A.    Statute of Limitations

Martin's claims do not appear to be barred by the statute of limitations.

### B.    Exhaustion

Martin's claims appear to have been exhausted in the state courts.

### C.    Procedural Default

The State asserts that Martin has procedurally defaulted his claims alleging ineffective assistance of trial counsel, prosecutorial and judicial misconduct, and error in the jury instructions, as more fully discussed below.

### D.    Non-retroactivity Doctrine

The State is not arguing that any of Martin's claims are barred by the non-retroactivity doctrine.

---

issue is abandoned if a party does not present any argument respecting the issue in his brief).  Habeas review of abandoned claims is barred.

## STATEMENT OF THE CASE

### A.   Trial Facts

The Michigan Court of Appeals summarized the facts adduced at

trial as follows:

> Defendant was a prisoner confined to the Marquette
> Branch Prison when the instant offense occurred. Lincoln
> Marshall, an inspector at the Marquette Prison, testified
> that on May 2, 2011, he intercepted two extortion letters
> that were addressed to Gail O'Dell, who worked as a
> correctional officer at the prison. Marshall had alerted the
> mail room that all communications from prisoners to prison
> employees be forwarded to him as a matter of course.
> Marshall took particular interest in the letters because there
> was an "inquiry" into whether O'Dell had become overly
> familiar with some of the prisoners.[1] The letters were sealed
> in envelopes and marked "confidential" with no return
> address. The letters instructed O'Dell to send money to an
> address or the author would publicly accuse her of criminal
> activity. Marshall made copies of each letter and then sent
> the copied letters along to O'Dell to see if she would turn the
> letters in and to better assess the truth of the letter's
> allegations.
>
> O'Dell testified that she received the letters alleging
> that she had set up a hit on an inmate who had been stabbed
> in the eye. The letters threatened to accuse her of setting up
> the stabbing if she did not send $10,000 to Gerald Lorence,
> an attorney in the Lower Peninsula. O'Dell took the letters
> to Marshall that same day and told him that she believed
> defendant had sent them. O'Dell's belief was based on
> similarities between the letters and another letter that she
> had previously received from defendant, where he accused
> her of having affairs with prisoners. She knew defendant
> wrote that letter because he asked her to retrieve it from the
> mail. O'Dell testified that she threw that first letter away

without showing it to her superiors. She further testified that the next two letters were written in the same fashion as the first.

Michigan State Police Officer Todd Johnston interviewed defendant. Defendant admitted to Johnston that an address written inside an envelope flap found in his cell was his handwriting. This was important because the extortion letters had bragged about knowing the personal address of another prison employee and the written notation on the envelope found in defendant's cell was the same address.[2] Johnston also spoke with the attorney mentioned in the extortion letters. Defendant had contacted the attorney in 2009 to work on an appeal but they never entered into an attorney-client relationship because the attorney never received legal fees or records from defendant.

Defendant denied writing or sending the letters. Defendant testified that both Marshall and Johnston tried to enlist defendant as an informant for investigations involving prison employees and other inmates.[3] Defendant had multiple conversations with both Marshall and Johnston and, on more than one occasion, the officers took defendant on excursions, driving around the Upper Peninsula. Defendant did not want to become a "snitch" or "mole" because it was too dangerous; the risk of death was too great. He was eventually transferred to Baraga Prison. Defendant acknowledged that he corresponded with the attorney named in the extortion letters in 2009 or 2010, stating that he never hired the attorney and that the attorney wanted $2,000 for a retainer to work on his case.

Defendant's fingerprint was matched to a latent fingerprint on one of the envelopes. His DNA matched samples taken from the two envelope flaps. The DNA on the flaps was likely from bodily fluid, rather than from cellular debris (dead skin cells, etc.), because there was a large amount of DNA present on the flaps. The odds that the DNA

profiles from the flaps would randomly match defendant's DNA profile were one in 1.5 quadrillion.[4]

The jury found defendant guilty of extortion and he was sentenced to 7 to 30 years' imprisonment.

_____

[1] The inquiry never became an "official investigation" and no misconduct was ever substantiated.

[2] Johnston explained that the prison employee had lost his identification inside the prison.

[3] Both Marshall and Johnston denied ever attempting to get defendant to act as an informant. Defendant also accused the prosecutor of being part of the conspiracy.

[4] The expert testified that it would take 214,000 Earths to have 1.5 quadrillion people, so randomly matching the envelope would be like randomly going to one of the 214,000 Earths, randomly picking one person, and having that person's DNA profile match the DNA profile from the envelope.

*People v. Martin*, No. 319400, 2015 WL 3477791, at *1-2 (Mich. Ct. App. June 2, 2015). This recitation of the facts is entitled to the presumption of correctness under § 2254(e)(1), and Martin has not demonstrated through clear and convincing evidence that this summary is incorrect.[3]

_____

[3] The presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records. *Treesh v. Bagley*, 612 F.3d 424, 430 n.1 (6th Cir. 2010); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)). The prosecution on direct appeal also set forth a more-detailed statement of facts. (9/8/14 People's Br. on Appeal, 1-10, Mich. Ct. App. No. 319400.)

The State opposes any factual assertions made by Martin that are not

directly supported by—or consistent with—the state court record.

## B.    Procedural History

After his sentencing, Martin filed a claim of appeal in the

Michigan Court of Appeals and raised the following claims, the first

four through counsel and the rest is a pro per brief:

I.    [Martin's] conviction should be overturned because
there was insufficient credible evidence at trial to
prove [Martin] guilty of the crime.

II.   The trial court denied [Martin] a fair trial and his due
process rights by: denying [Martin's] request for payment of
expert witness fees to allow the hiring of experts to attempt
to prove the extortion letters were not made on [Martin's]
typewriter and the letters had not gone through the mail
room; and the trial court forbidding [Martin] to call a
number of MDOC witnesses.

III.  [Martin's] sentence was invalid because it was based on
inaccurate information, i.e., improper scoring of the
legislatively imposed sentencing guidelines, use of an
incorrect burden of proof, and insufficient facts; therefore,
his due process rights were violated.

IV.   Correctly scoring the guidelines would require resentencing.

V.    [Martin's] conviction should be overturned because there
was insufficient credible evidence at trial to prove [Martin]
guilty of the crime and the trial attorney's incompetence
failing to familiarize himself with the police incident report,
preliminary, pretrial transcripts before trial, to properly and
effectively prepare my defense and investigate to prove the

8

State's witnesses were perjuring themselves and the judge
and prosecutor knew and allowed it into records as if it was
fact in front of my jury at trial violating my due process.

VI.    The trial court denied me a fair trial and violated all of my
state and federal constitutional rights by denying the jury to
review all of the evidence excluded and Lincoln Marshall's
entire testimony included with mine . . . included with the
Michigan State Police report authored by Detective/Sgt.
Todd Johnston and the other State witnesses' testimony
which would've cast doubt on their credibility and could've
resulted in a not guilty verdict.

VII.   [Martin] is entitled to a *Ginther* hearing, *Franks* hearing,
and evidentiary hearing because of the many procedural,
plain, and structural errors committed by three separate
attorneys, the judge and prosecutor; my trial attorney failed
to effectively protect my state and federal constitutional
rights as well as two separate judges and two other
prosecutors at preliminary, pretrial and at trial knowingly
allowing perjured testimony that's part of records that's not
fact in accord with preponderance of the evidence of real
facts that [were] excluded, the prosecutor failed to discover
upon request and acted in bad faith and conducted malicious
prosecution and prosecutorial misconduct and the judge
failed to abide by cannon laws 1, 2, and 3, which is judicial
misconduct and my three separate lawyers were ineffective,
cases are dismissed, reversed and remanded for such.

The Michigan Court of Appeals affirmed Martin's conviction and

sentence in an unpublished per curiam opinion. *Martin*, 2015 WL

3477791, at *1.

Martin then filed an application for leave to appeal in the

Michigan Supreme Court and raised the same claims as in the

9

Michigan Court of Appeals, as well as several new claims, alleging in part that he had a right to testify at a competency hearing and that one of the jurors knew some of the State's witnesses. The Michigan Supreme Court denied the application, noting in part that "[a]lthough the Court of Appeals in this case relied on *People v Herron*, 303 Mich App 392 (2013), which this Court overruled in *People v Lockridge*, 498 Mich 358 (2015), we are not persuaded that the defendant has established a threshold showing of plain error under *Lockridge* or that the questions presented should otherwise be reviewed by this Court." *People v. Martin*, 886 N.W.2d 635 (Mich. 2016).

Martin then returned to the state trial court and filed a motion for relief from judgment, where he raised a number of claims. The trial court denied the motion, citing to Mich. Ct. R. 6.508(D)(3) and to a lack of merit. (2/9/17 Order on Mot. for Relief from Judgment.) After that, Martin filed a delayed application for leave to appeal in the Michigan Court of Appeals, but that court denied the delayed application because Martin "failed to establish that the trial court erred in denying the motion for relief from judgment." (6/28/07 Mich. Ct. App. Order.)

Martin did not appeal the denial of his delayed application to the

Michigan Supreme Court.  (See Affidavit of Larry Royster.)

## STANDARD OF REVIEW PURSUANT TO AEDPA

Before turning to Martin's claims it is important to recognize the limited nature of federal habeas court review. Congress mandated the standards of review in federal habeas proceedings in 1996 in the Antiterrorism and Effective Death Penalty Act (AEDPA). Recognizing the foundational principle that "[s]tate courts are adequate forums for the vindication of federal rights," "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013); 28 U.S.C. § 2254(d).

Congress has limited the availability of federal habeas corpus relief "with respect to any claim" the state courts "adjudicated on the merits." 28 U.S.C. § 2254(d).[4] Habeas relief may not be granted to a habeas petitioner under § 2254(d) unless the state court adjudication:

_____

[4] The Supreme Court has instructed habeas courts to apply a rebuttable presumption that a "federal claim was adjudicated on the merits" even "[w]hen a state court rejects a federal claim without expressly addressing that claim." *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013). *See also Kernan v. Hinojosa*, 136 S. Ct. 1603, 1606 (2016) (per curiam) ("Containing no statement to the contrary, the Supreme Court of California's summary denial of Hinojosa's petition was therefore on the merits.").

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Identifying clearly established federal law is the threshold question under AEDPA and § 2254(d)(1).  *Dewald v. Wrigglesworth*, 748 F.3d 295, 299 (6th Cir. 2014) (internal quotations omitted); *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (the starting point in a § 2254(d)(1) inquiry is to identify the relevant "clearly established" law). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta," of the Supreme Court's decisions.  *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotations and citations omitted).

With respect to § 2254(d)(1), a state court decision is "contrary to" federal law only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 n.2 (2013) (internal quotation marks and citation omitted). A state court decision involves an unreasonable application of clearly

13

established Federal law pursuant to § 2254(d)(1) if "the state-court decision identifies the correct governing legal principle in existence at the time," but "unreasonably applies that principle to the facts of prisoner's case." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (internal quotation marks and citation omitted).

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted). This means that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* Instead, the state court's "application must be objectively unreasonable." *Id.* That distinction creates "a substantially higher threshold" to obtain relief than de novo review. *Id.*; *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Further, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102; *Lovell v. Duffey*, 629 F.3d 587, 598 (6th Cir. 2011) (to grant relief, the state-court decision must be so inadequately supported by the record, or so arbitrary as to be

14

unreasonable; if a state court's decision on a constitutional question is "a close call," that militates against the conclusion that the state court's application of Supreme Court law was objectively unreasonable).

Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Richter*, 562 U.S. at 102. Moreover, "[i]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted). And federal court of appeals precedent cannot "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (per curiam) (citation omitted); *see also Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (providing that absent a decision by the Supreme Court addressing "the specific question presented by [a] case" a federal court cannot reject a

state court's assessment of claim).  Where no Supreme Court cases confront "the specific question presented" by the habeas petitioner, "the state court's decision [cannot] be contrary to any holding from this Court."  *Woods v. Donald*, 135 S. Ct. 1372, 1377 (2015) (per curiam) (internal quotation marks and citation omitted).[5]  *See also Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016) (per curiam) (Where "[n]o precedent of [the Supreme Court] clearly forecloses" a state court's ruling, it simply cannot be an unreasonable application of Supreme Court precedent.)

Under § 2254(d)(2), the "unreasonable determination" clause, "a state-court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  *Titlow*, 134 S. Ct. at 15 (internal quotation marks and citation omitted).  "Under AEDPA, if the state-court decision was

---

[5] The Supreme Court has specifically warned habeas courts that, "[b]y framing [Supreme Court] precedents at [too] high [a] level of generality, [it] could transform even the most imaginative extension of existing case law into 'clearly established Federal law, as determined by the Supreme Court.'"  That "approach would defeat the substantial deference that AEDPA requires" be given to state-court decisions.  *Nevada v. Jackson*, 133 S. Ct. 1990, 1994 (2013) (per curiam).

reasonable, it cannot be disturbed." *Hardy v. Cross*, 132 S. Ct. 490, 495 (2011) (per curiam).

A federal court must refrain from issuing a writ "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Richter*, 562 U.S. at 101. To clear the § 2254(d) hurdle, a habeas petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. The Supreme Court has stated that "[w]hen reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions *only when there could be no reasonable dispute that they were wrong*." *Woods v. Donald*, 135 S. Ct. 1372, 1377 (2015) (Emphasis added).

To recap, the burden that a petitioner must meet in order to obtain the extraordinary remedy of habeas relief is a high one. "[S]tate-court decisions [must] be given the benefit of the doubt." *Pinholster*, 563 U.S. at 181 (internal quotation marks and citation omitted).

"Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (internal quotation marks and citation omitted) (Emphasis added).  The petitioner's burden is made even heavier by the fact that a federal court is "limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181.

# ARGUMENT

I.   **Habeas relief is not warranted on Martin's sufficiency claim because he cannot show the Michigan Court of Appeals' ruling was a malfunction, let alone an extreme one.**

Habeas relief is an "extraordinary remedy," *Bousley v. United States*, 523 U.S. 614, 621 (1998) and one that is not warranted in this case.  But before turning to Martin's claims about his conviction and sentence for extortion, this Court could decline to consider those claims under the concurrent sentencing doctrine, given that Martin is currently serving a 50 to 76 year prison sentence for second-degree murder.  The concurrent sentence doctrine provides that "an appellate court may decline to hear a substantive challenge to a conviction when the sentence on that conviction is being served concurrently with an equal or longer sentence on a valid conviction." *Dale v. Haeberlin*, 878 F.2d 930, 935 n.3 (6th Cir. 1989), cert. denied, 494 U.S. 1058 (1990).  A court could exercise its discretion not to review the validity of a conviction under this doctrine where it is clear that no collateral consequences would result in allowing the challenged conviction to stand, and the issues do not otherwise involve significant questions meriting consideration.  *United States v. Hughes*, 964 F.2d 536, 541 (6th

Cir. 1992).  This Court could exercise its discretion and find that the

concurrent sentence doctrine bars review of Martin's claims about his

extortion conviction and sentence because, regardless of the outcome, he

will still be serving a 50 to 76 year prison sentence for his murder

conviction.  But even if this Court considers Martin's other claims,

habeas relief is not warranted.

Insufficient-evidence claims "face a high bar in federal habeas

proceedings because they are subject to two layers of judicial deference."

*Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012); *see also Parker v.*

*Matthews*, 132 S. Ct. 2148, 2152 (2012) (under AEDPA, a habeas court's

review of a sufficiency claim is "twice-deferential."); *White v. Steele*, 602

F.3d 707, 710 (6th Cir. 2009).  The first layer of deference is due to the

trier of facts verdict under *Jackson v. Virginia*, 443 U.S. 307 (1979).

Under *Jackson*, the relevant inquiry in sufficiency of the evidence

claims "is whether, after viewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt."

*Jackson*, 443 U.S. at 319 (Emphasis in original).  "*[A]ll of the evidence* is

to be considered in the light most favorable to the prosecution."  *Id.*

(Emphasis in original).  This standard is to be applied regardless of whether the evidence of guilt was direct or circumstantial, circumstantial evidence is entitled to equal weight as direct evidence, and the prosecution may meet its burden entirely through circumstantial evidence.  *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003); *Holland v. United States*, 348 U.S. 121, 140 (1954).  Also, "[p]ieces of evidence are not to be viewed in a vacuum; rather, they are viewed in relation to the other evidence in the case."  *Davis v. Lafler*, 658 F.3d 525, 533 (6th Cir. 2011).  It is the trier of fact's responsibility—not the reviewing court's—to determine what conclusions should be drawn from the evidence presented at trial, so when "faced with a record of historical facts that supports conflicting inferences [courts] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Cavazos v. Smith*, 565 U.S. 1, 6 (2011) (quoting *Jackson*, 443 U.S. at 326).  Federal habeas courts reviewing sufficiency claims must not reweigh the evidence or re-determine the credibility of witnesses whose demeanor was observed by the finder of fact.  *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  The

21

prosecutor also does not have an affirmative duty to rule out every hypothesis except that of guilt. *Jackson*, 443 U.S. at 326.

*Jackson* gives the trier of fact "broad discretion" in deciding what inferences to draw from the evidence presented at trial. *Coleman*, 132 S. Ct. at 2064. The Sixth Circuit has described the *Jackson* standard as "so demanding that a defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle." *Davis*, 658 F.3d at 534 (internal quotation omitted). According to the Supreme Court, "the only question under *Jackson* is whether [the trier of facts finding] was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065.

The second layer of deference applies to the state court's decision; here, the Michigan Court of Appeals. A state-court decision that the evidence satisfied the *Jackson* standard is itself "entitled to considerable deference under AEDPA." *Coleman*, 123 S. Ct. at 2065. Under AEDPA a federal court must give state court decisions "the benefit of the doubt." *Lett*, 559 U.S. at 773. A federal habeas court may not "improperly substitute [ ] its evaluation of the record for that of the state trial court." *Rice v. Collins*, 546 U.S. 333, 337-38 (2006). Where

there are "a number of plausible ways to interpret the record," the court's disagreement with the inferences the state court drew from the record is not sufficient to reverse its findings if the state court's interpretation is plausible. *Lett*, 559 U.S. at 777-78. It is through this double-deference that "judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Cavazos*, 565 U.S. at 2. Further, the reasonableness of the state court judgment is partially dependent on whether the legal rule being applied is specific or general. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id*. The standard for sufficiency claims is "exceedingly general." *Davis*, 658 F.3d at 535.

The Sixth Circuit has noted that the question is not whether it would have found the petitioner guilty beyond a reasonable doubt, or even whether any reasonable trier of fact could have reached that conclusion; rather, the question is whether the state court itself was unreasonable in *its* conclusion that a rational trier of fact could find the petitioner guilty based on the evidence at trial. *Copeland v. Tiseo*, 645 F. App'x 500, 504 (6th Cir. 2016).

On direct appeal, Martin argued that there was no factual basis for his conviction, that the evidence was legally insufficient, and that, at most, he was guilty of attempted extortion. After setting forth the elements in Michigan's extortion statute and the proper standard for reviewing sufficiency claims, the Michigan Court of Appeals denied relief on Martin's sufficiency claims as follows:

## A. FACTUAL CHALLENGE

"A claim of insufficient evidence is reviewed de novo, in a light most favorable to the prosecution, to determine whether the evidence would justify a rational jury's finding that the defendant was guilty beyond a reasonable doubt." *People v McGhee*, 268 Mich App 600, 622; 709 NW2d 595 (2005). All factual conflicts in the evidence must be resolved in favor of the prosecution. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748, modified on other grounds 441 Mich. 1201 (1992). "[T]he issue of credibility is for the jury to decide and we will not resolve credibility issues anew on appeal." *People v Milstead*, 250 Mich App 391, 404; 648 NW2d 648 (2002). Thus, this Court "is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Defendant points to "mitigating" evidence that created a "reasonable doubt" whether defendant committed the crime of extortion. For example, he contends that he could not have known details about the Upper Peninsula had he not been driven around by the authorities when they were attempting to get him to act as an informant. He also points to the fact that his typewriter ribbon was missing from his cell and that there was confusion as to whether and how Marshall created duplicate envelopes when he sent the

letters on to O'Dell. Defendant argues that another prisoner could have borrowed envelopes from defendant that contained defendant's DNA and fingerprints and that defendant was not necessarily the only person who knew of the attorney in the Lower Peninsula. Defendant further points to the lack of video evidence showing him depositing anything in the mailbox.

Defendant's argument is simply an effort to have this Court reweigh the evidence and make credibility determinations in his favor. Defendant's argument at trial was that he did not write or send the letters and that he was subjected to a false accusation that was made for the purpose of coercing him into become an informant. The jury, having convicted defendant of extortion, necessarily determined that the investigators, correctional officers, police officers, and forensic pathologists were credible and that defendant was not. This Court may not interfere with the jury's credibility determination. *Nowack*, 462 Mich at 400; *Milstead*, 250 Mich App at 404.

A rational jury could conclude from the trial testimony that defendant was guilty of extortion. Defendant had sent O'Dell a letter in the past. There was DNA evidence connecting defendant to the envelopes. Additionally, defendant admitted that he had been in contact with the attorney mentioned in the extortion letters. Accordingly, the evidence, viewed in the light most favorable to the prosecution, was sufficient to support defendant's conviction.

## B. LEGAL CHALLENGE

Defendant argues that his conduct did not satisfy the extortion statute because Marshall intercepted the extortion letters before they reached the intended victim and it was Marshall—not defendant—who passed the letters along to O'Dell. Defendant rests his argument on the statutory requirement that there be "a written or printed *communication*," MCL 750.213, arguing that for there to be a

"communication" the person who is being communicated with has to receive the communication. Defendant asserts that when Marshall, for his own purposes and not for the purpose of assisting in the commission of a crime, tested O'Dell by sending copies of the messages in retyped envelopes, this was a completely different and separate action. Defendant argues that the extortion crime was prevented when the letters were intercepted (and O'Dell was unaware of their existence), and that defendant is at most guilty of attempted extortion. We disagree.

This Court reviews de novo issues of statutory interpretation. *People v Hrlic*, 277 Mich App 260, 262; 744 NW2d 221 (2008).

At issue here is the definition of "communication," which is not statutorily defined in MCL 750.213. "The purpose of statutory interpretation is to determine the Legislature's intent. To do so, this Court examines the plain and ordinary language of the statute. If the statute's plain and ordinary language is not ambiguous, we must enforce the statute as written." *People v Baldes*, __ Mich App __; __ NW2d __ (Docket No. 320460, issued March 17, 2015), slip op, p. 2 (internal citations omitted). "[W]hen terms are not expressly defined by a statute, a court may consult dictionary definitions." *People v Denio*, 454 Mich 691, 699; 564 NW2d 13 (1997). Black's Law Dictionary defines "communication" as "1. The expression or exchange of information by speech, writing, gestures, or conduct; the process of bringing an idea to another's perception. 2. The information so expressed or exchanged." Black's Law Dictionary (9th ed), p. 316. Random House Webster's Unabridged Dictionary (2d Ed), p. 414 defines "communication" as "1. the act or process of communicating; fact of being communicated. 2. the imparting or interchange of thoughts, opinions, or information by speech, writing, or signs. 3. something imparted, interchanged, or transmitted. 4. a document or message imparting news, views, information, etc."

Here, the prosecution was required to prove that defendant, by a written or printed communication, maliciously threatened to accuse O'Dell of a crime with the intent to extort money. The statute does not require that a defendant actually communicate the threat to the victim. Rather, it requires "*a* written or printed communication," i.e., a written or printed "message" or "expression" of the threat. Even accepting defendant's argument that "communication" requires both the declaration of a threat and the perception and comprehension of that threat, there is nothing in the plain language of the statute requiring that the threat be understood by only the targeted victim; rather, it is enough that someone perceived the threat. Here, that individual was Marshall. The letters in the instant case were clearly a printed message that communicated a threat; as such the elements of extortion were satisfied. Accordingly, defendant's argument fails because the threat does not need to be received by the intended target to be a "communication" pursuant to MCL 750.213. That Marshall first read the letters is of no consequence.[5]

Moreover, even if we were to accept defendant's theory that the target of extortion must actually receive the threat, O'Dell, in fact, received defendant's letters, albeit copies of the originals. Defendant excuses his criminal conduct by arguing that it was Marshall who actually sent the letters. Defendant provides an analogy with malicious destruction of property: If a defendant throws a brick towards a window with the intent to break the window, but a policeman catches the brick before it hits the window, there is only attempted malicious destruction of property. If the next day the police officer decides to throw the same brick (which he saved) through the window the "undersigned doesn't believe anyone could say the defendant is somehow responsible for the police officer's actions."

"Where an independent act of a third party intervenes between the act of a criminal defendant and the harm to a victim, that act may only serve to cut off the defendant's

criminal liability where the intervening act is the sole cause of harm." *People v Bailey*, 451 Mich 657, 677; 549 NW2d 325 amended on denial of reh 453 Mich 1204 (1996). "In assessing criminal liability for some harm, it is not necessary that the party convicted of a crime be the sole cause of that harm, only that he be a contributory cause that was a substantial factor in producing the harm. The criminal law does not require that there be but one proximate cause of harm found. Quite the contrary, all acts that proximately cause the harm are recognized by the law." *Id*. at 676.

The "intervening cause" theory is not helpful to defendant. To the extent O'Dell suffered "harm" in reading the letters, defendant was the primary cause of that harm. The prosecution presented sufficient evidence to support defendant's extortion conviction.

---

[5] We find further support in *People v Markham*, unpublished opinion per curiam of the Court of Appeals, issued December 11, 2012 (Docket No. 303734), slip op, pp 3–5, wherein a panel of this Court concluded that threats posted on a defendant's website would satisfy a communication under the extortion statute because direct communication of a threat is not required. "Although unpublished opinions of this Court are not binding precedent ... they may, however, be considered instructive or persuasive." *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145; 783 NW2d 133 (2010).

*Martin*, 2015 WL 3477791, at *2-5.

Martin has not established that there is "no reasonable dispute" the Michigan Court of Appeals' denial of relief on his sufficiency claim was wrong. The state appellate court reasonably determined that the evidence, as a whole, and viewed in the light most favorable to the

prosecution, was more than sufficient evidence to enable the jury to find Martin guilty of extortion.  The prosecutor on direct appeal also argued that there was sufficient evidence to support the jury's decision.  (9/8/14 People's Br. on Appeal, 10-13, Mich. Ct. App. No. 319400.)

To the extent that Martin is challenging the inferences that the jury drew from the testimony at trial, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts.  The jury's verdict was reasonable, and the evidence viewed in the light most favorable to the prosecution established Martin's guilt.  Any claim that the prosecutor's witnesses were less than credible or believable does not warrant habeas relief.  Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence.  *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002).  An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims.  *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000).

To the extent that Martin is challenging the state court's interpretation of what Michigan's extortion statute means or requires, that claim is not cognizable on federal habeas review.  It is "not the

province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A court on federal habeas review is limited to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States.

Where the Michigan Court of Appeal's ruling is supported by the record and was not an unreasonable application of *Jackson*, habeas relief is not warranted on Martin's sufficiency claim. But even if this Court was to somehow find that the Michigan Court of Appeals' ruling on the sufficiency issue was a close one—a point the State in no way concedes—that would militate against a finding that its application of *Jackson* was unreasonable, particularly given the exceedingly general nature standard set forth in *Jackson*. *Davis,* 658 F.3d at 535 (citing *Lopez v. Wilson*, 426 F.3d 339, 358 n. 1 (6th Cir. 2005) (Cole, J., concurring)).

## II.   Habeas relief is not warranted on Martin's claim regarding his right to present a defense.

In his second claim Martin asserts that his constitutional rights were violated when the trial court denied his motions to obtain a court-

appointed typewriter expert and a court-appointed handwriting expert, and when the court granted the prosecution's motion in limine to prevent Martin from calling a number of MDOC witnesses.  Martin raised these claims on direct appeal but the Michigan Court of Appeals denied relief:

> Defendant argues that he was denied the right to present a defense when the trial court: 1) denied his motion to hire an expert to examine defendant's typewriter; 2) denied defendant's motion to hire a handwriting expert; and 3) granted the prosecution's motion in limine to prevent defendant from calling a number of Department of Correction (MDOC) witnesses.

> "This Court reviews for abuse of discretion a trial court's decision whether to grant an indigent defendant's motion for the appointment of an expert witness." *People v Carnicom*, 272 Mich App 614, 616; 727 NW2d 399 (2006). Likewise, this Court reviews a trial court's decision to exclude evidence for an abuse of discretion. *People v Watkins*, 491 Mich 450, 467; 818 NW2d 296 (2012). "A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes." *Id*.

> "Evidentiary error does not require reversal unless after an examination of the entire cause, it appears more probable than not that the error affected the outcome of the trial in light of the weight and strength of the properly admitted evidence." *People v Benton*, 294 Mich App 191, 199; 817 NW2d 599 (2011).

### A. EXPERT WITNESS FEES

Defendant sought to retain defense experts at public expense. Defendant wanted an expert in typewriter

comparison to analyze whether or not these letters could
have been generated by defendant's typewriter.6 Defendant
also wanted a handwriting expert to analyze handwritten
notes on the outside of the envelopes to help determine when
and by whom they were made.

The trial court provided a detailed explanation for its
decision to deny defendant's motion, as follows:

> Well, first, as to the request for expert witnesses,
> under ... MCL 775.15, the Court does have
> discretion to fund expert witnesses, provided that
> the indigent defendant is able to show there is a
> material witness in his favor, without whose
> testimony he cannot safely proceed to trial. And
> certainly Mr. Martin, being an inmate with the
> Department of Corrections, is indigent. However,
> the appointment of an expert witness, or
> authorizing retention of an expert witness at
> public expenses, is discretionary with the Court
> under *People versus Jacobson* at 448 Mich 639.
> And the defendant must demonstrate a nexus or
> connection between the facts of the case and the
> need for an expert.

> Now, in this case, although it sounds like the
> prosecution does not dispute that a typewriter
> ribbon or typewriter may have been taken from
> Mr. Martin's cell, I'm hearing no connection
> between that typewriter and the ribbon to any
> evidence the People intend to prove in this case.
> Now—Nor do the People intend to call, at least as
> Mr. Griffin says, any expert witness connecting
> up either the typewriter or the typewriter ribbon
> with this case. So recognizing this is a
> discretionary call, I'm going to deny the motion
> for funds to retain a typewriter or typewriter
> ribbon expert.

Now, in the event this case proceeds on to trial, and the People call in any—or offer any evidence related to the typewriter ribbon, any opinion evidence, that in that event, I would certainly consider a mistrial, if the defendant is not expected to meet any of that evidence. Now, having said that, if the People intend to offer simply factual evidence that—and I don't know if these letters at issue were typed or not, but if they intend to offer into evidence the fact that a typewriter was removed from Mr. Martin's cell, and no opinion evidence is offered that these items were written on that particular typewriter, I don't regard that fact evidence, that Mr. Martin had access to a typewriter, to be opinion evidence that would call for any kind of expert testimony. And with that understanding, I'm going to deny the defense motion for retention of a typewriter or ribbon expert.

In terms of the handwriting expert analysis, apparently the question goes to how—what I'll call, for lack of a better term, in-house mail is handled within the prison system, how it is processed. That again does not seem to me to fall within the ambit of expert opinion testimony of handwriting identification as much as it does the process by which mail is processed, both in-house mail or outside mail coming in. And it seems to me that does not fall within the realm of expert opinion testimony. And in terms of the need for such testimony, to somehow or another, by way of a handwriting opinion, that the investigating— Department of Corrections Investigator Lincoln Marshall somehow or another is lying in his preliminary exam testimony, other than the boldfaced assertion that he is lying. I don't have— I don't find evidence here that, in the exercise of

discretion, would show a handwriting expert is necessary for the defendant to safely proceed to trial. Nor does it sound like the People intend to offer any handwriting expert analysis opinion as part of their case in chief.

So in the exercise of discretion, I'm going to deny the defense motion for funds to retain either a typewriter or typewriter ribbon expert, or a handwriting expert in this case.

The trial court properly exercised its discretion in ruling that there was not a sufficient showing by defendant to justify public expenditures. The prosecution was not going to offer any testimony related to the typewriter or the ribbon used on it. Defendant asked for funds to hire an expert in typewriters but offered nothing more than speculation that the expert might find something helpful. As the trial court recognized, there was no "nexus between the facts of the case and the need for an expert," and there was no indication that a typewriter expert would "likely benefit" the defense. *People v Jacobsen*, 448 Mich 639, 641; 532 NW2d 838 (1995) ("Without an indication that expert testimony would likely benefit the defense, it was not error to deny without prejudice the motion for appointment of an expert witness."). Likewise, there was no indication that a handwriting expert would "likely benefit" the defense. Accordingly, the trial court did not abuse its discretion when it denied defendant's request for a court-appointed typewriter expert and a court-appointed handwriting expert.

Moreover, even if this Court were to assume that the trial court abused its discretion in regard to either denial, defendant cannot show that the alleged error makes it "more probable than not" that the error affected the outcome. *Benton*, 294 Mich App at 199. As previously discussed, there was a substantial amount of compelling evidence presented in this case, much of it scientific, to support the jury's verdict.

## B. MDOC WITNESSES

Defendant's witness list included 18 MDOC officers who worked at the Marquette Prison; the list included seven "food stewards," three people who worked as medical or dental personnel, and one prisoner. The prosecution filed a motion in limine, requesting that the defense be prohibited from calling these witnesses. The trial court granted plaintiff's motion in limine with a few exceptions:

> Now, I'm going to grant the motion in limine that—with the exception of Sergeant Buckner, and any other MDOC employees that are identified in Detective Lieutenant Johnston's report. Other than those officers or employees that are identified in the report, as to the remainder of the list of MDOC employees I've listed, I'm going to grant the People's motion in limine that such witnesses not be called unless the defendant makes some pretrial proffer in writing of the expected testimony of such witnesses and the relevancy of that testimony to the issues in this case, and in light of my ruling on the motion in limine, that the underlying conduct of the corrections officer, if any exist that would be a law or rule violation, is not relevant to a jury determination. If, however, any of these proposed MDOC witnesses contain exculpatory evidence as to the defendant not being the author of this correspondence, or somehow or another would provide and assist the defense in his defendant [sic] other than the underlying conduct issue of which the jury is not going to hear any evidence, that these witnesses are not going to be—that the Court will not have them called or subpoenaed unless there is an offer of proof showing some relevancy to the issues the jury has to determine in this case.

35

Defendant's contention that the trial court abused its discretion is without merit. Defendant argues the trial court mistakenly assumed that the only reason for calling these witnesses would be to prove the truth of the underlying accusation as some kind of "legal defense" to the charge of extortion. However, the record reveals otherwise. It did agree that the "truth" of the accusation is not a defense to extortion, and that evidence that the underlying accusation was true would not be admissible for such a purpose. However, the trial court also clearly understood and addressed defendant's argument that this evidence was relevant to show that there was some type of plot against defendant:

> Now, I understand, in part from earlier arguments of counsel and some of the pro se communications of defendant, that Mr. Martin's position is that he is not the author of these items of correspondence, that somebody else is the author, and he's somehow or another being framed, and that the truth of the underlying offense would go to the motivation I suppose of those who are trying to frame him. On these discovery motions, I see no evidence of that, and to open up that line of inquiry, either argument, or examination of witnesses, or cross-examination of witnesses at trial, on the basis of unsigned and anonymous kites that, as Inspector Marshall said, go on all the time within prison, would lead us to a trial of innuendo and rumor, and as it relates to people employed in their work as Corrections Officers, and would have no relevancy that I can see as to whether or not the elements of the statute are proven up, and whether or not the defendant is the author of these items of correspondence.

The trial court did not abuse its discretion when it denied defendant's request for a court-appointed typewriter

expert and court-appointed handwriting expert. The trial
court also did not abuse its discretion when it denied
defendant's request to call a number of MDOC witnesses.

*Martin*,   2015 WL 3477791, at *5-8.

As an initial matter, and to the extent that Martin claims that the

alleged trial court errors violated the Michigan Rules of Evidence or

other Michigan law, he fails state a claim upon which habeas relief may

be granted.  As noted above, the remedy of habeas corpus lies only for a

violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme

Court has explained, an inquiry whether evidence was properly

admitted or improperly excluded under state law "is no part of the

federal court's habeas review of a state conviction [for] it is not the

province of a federal habeas court to re-examine state-court

determinations on state-law questions."  *Estelle,* 502 U.S. at 67-68; see

also *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not

issue the writ [of habeas corpus] on the basis of a perceived error of

state law"); *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988)

("[E]rrors in the application of state law, especially rulings regarding

the admission or exclusion of evidence, are usually not to be questioned

in a federal habeas corpus proceeding.")  Rather, "[i]n conducting

37

habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle,* 502 U.S. at 68. So to the extent that Martin claims that the alleged errors violate the Michigan Rules of Evidence or Michigan law, his claims are not cognizable on habeas review. Martin also has not established that the alleged errors denied him a fair trial or violated his right to present a defense.

"Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *Estelle*, 502 U.S. at 69-70). Stated differently, only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). "[T]he Supreme Court has defined 'very narrowly' the category of infractions that violates 'fundamental fairness.'" *Bey v. Bagley*, 500 F.3d 514, 522

(6th Cir. 2007) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).[6]

The right of an accused to present a defense has long been recognized as "a fundamental element of due process." *Washington v. State*, 388 U.S. 14, 19 (1967); see also *Holmes v. South Carolina*, 547 U.S. 319, 329-31 (2006) (state rule excluding evidence of third party guilt based solely on strength of prosecution's case violated defendant's right to present a defense); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (exclusion of hearsay statements critical to defense which "bore persuasive assurances of trustworthiness," coupled with refusal to permit cross-examination of the declarant, violated defendant's right to due process).  However, "a defendant's right to present evidence is not

---

[6] Fundamental fairness does not, however, "require a perfect trial." *Clemmons v. Sowders*, 34 F.3d 352, 358 (6th Cir. 1994).  Furthermore, "because a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self-restraint." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks omitted).  "To show a due process violation under AEDPA rooted in an evidentiary ruling, this court has typically required a Supreme Court case establishing a due process right with regard to that specific kind of evidence." *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012) (citing *Collier v. Lafler*, 419 F. App'x 555, 558 (6th Cir. 2011)).

unlimited, but rather it is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998).  A defendant "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)); *see also Holmes*, 547 U.S. at 326 (recognizing that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury"). State rules excluding evidence from criminal trials "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Scheffer*, 523 U.S. at 308 (internal citations omitted).  "A defendant's interest in presenting ... evidence may thus bow to accommodate other legitimate interest in the criminal trial process." *Id*.  When deciding if the exclusion of evidence infringes upon a defendant's rights, the question is not whether the excluded evidence would have caused the jury to reach a different result.  The question is whether the defendant was afforded "a meaningful opportunity to present a complete defense."

*Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)); see also *Chambers*, 410 U.S. at 302.

Martin alleges that his right to present a defense was violated by the trial court's denial of his requests for a court-appointed typewriter and handwriting expert and by the trial court's denial of his request to call a number of MDOC witnesses. But Martin has not established that the trial court's rulings rendered his trial fundamentally unfair, or that it violated his right to present a defense. As noted above, fundamental fairness does not require a "perfect trial," and Martin cannot show that the challenged trial court's rulings rendered his trial fundamentally unfair. More importantly, Martin cannot show that the state appellate court's decision[7] contradicted or unreasonably applied clearly established Supreme Court law or unreasonably determined the facts— or that there is "no reasonable dispute" the state court's ruling was wrong. The trial court's rulings were not based on an arbitrary, mechanistic, or per se application of the state's evidentiary rules and

---

[7] The Michigan Court of Appeals denied relief on Martin's claims and that denial, on the merit, is subject to AEDPA deference.

were not disproportionate to the purposes behind the rulings.  The trial

court made an individual determination on Martin's requests and

denied them.  Regarding his requests for court-appointed expert

assistance, the prosecution on direct appeal aptly pointed out that the

State was not planning on putting forth any expert testimony about the

typewriter and Martin failed to identify any expert who would have

testified on his behalf or establish that an expert would have benefitted

the defense.  (9/8/14 People's Br. on Appeal, 14-16, Mich. Ct. App. No.

319400.)  Conclusory allegations and speculation that any experts

would have helped are insufficient to establish that they may have

given helpful information.  And even if it was somehow error for the

trial court to rule as it did—a point the State does not concede—the

Michigan Court of Appeals reasonably determined that such errors

would be harmless given the compelling evidence of Martin's guilt.

Regarding the claim about calling certain witnesses, the trial court's

denial of Martin's request to call certain MDOC witnesses was based on

the court's belief that those witnesses would not have provided any

relevant testimony.  (9/8/14 People's Br. on Appeal, 16-18, Mich. Ct.

App. No. 319400.)  But the court noted that if Martin provided an offer

of proof that the proposed MDOC witnesses had exculpatory evidence, it would reconsider its ruling.  This was not objectively unreasonable.

That Martin would have preferred to have had the two court-appointed experts and to have called all of the witnesses he wanted to call does not result in a violation of Martin's constitutional rights. Martin also had a meaningful opportunity to present a complete defense at trial: he took the stand and denied writing or sending the letters, he testified that prison officials repeatedly tried to recruit him to be an informant, and he testified that when he refused their requests, they retaliated against him.  Martin points to no United States Supreme Court precedent holding that a trial court must allow the admission of testimony which was not necessary or relevant in order to satisfy the Constitution.  Where Martin has failed to establish that the trial court's evidentiary rulings were contrary to or an unreasonable application of Supreme Court precedent, or that they violated his federal constitutional rights, relief is not warranted on his second habeas claims.

## III. Habeas claim is not warranted on Martin's claims alleging sentencing error.

Martin in his third claim asserts that his sentence was based on inaccurate information and that his sentencing guidelines, namely offense variable (OV) 19, was wrongly scored.  In his fourth claim Martin asserts that correct scoring of his guidelines would require resentencing.  Martin raised these claims on direct appeal but the Michigan Court of Appeals denied relief:

> Defendant argues that offense Variable (OV) 19 (threat to security of penal institution) was improperly scored because there was no element of the extortion offense that required a threat to the security of a penal institution and there was no testimony of a particular threat to security. He further asserts the trial court invaded the province of the jury in scoring OV 19. We disagree.
>
> > Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (footnotes containing citations omitted).]
>
> A score of 25 points for OV 19 is appropriate when "the offender by his or her conduct threatened the security of a penal institution or court." MCL 777.49(a). Here, defendant sent two letters to O'Dell threatening to accuse her of

44

criminal activity unless she paid an attorney $10,000.00.
Defendant essentially attempted to persuade a correctional
officer to do his bidding. Such an act could affect the officer's
judgment and could potentially lead to a very severe threat
to the security of the facility. In essence, as discussed during
sentencing, the officer could end up "on the payroll" of an
inmate. Threatening a guard in this manner fits squarely
within threatening the security of the Marquette Prison.
Accordingly, the trial court properly scored OV 19 at 25
points.

Contrary to defendant's assertions, the facts used in
scoring the offense variables do not need to be proven beyond
a reasonable doubt before the jury. "While judicial fact-
finding in scoring the sentencing guidelines produces a
recommended range for the minimum sentence of an
indeterminate sentence, the maximum of which is set by
law, [*People v*] *Drohan*, 475 Mich [140] at 164, 715 NW2d
778 [2006], it does not establish a mandatory minimum;
therefore, the exercise of judicial discretion guided by the
sentencing guidelines scored through judicial fact-finding
does not violate due process or the Sixth Amendment right
to a jury trial." *People v Herron*, 303 Mich App 392, 403–404;
845 NW2d 533 (2013), application held in abeyance __ Mich
__; 846 NW2d 924 (2014).

*Martin*, 2015 WL 3477791, at *8.

Martin's challenge to the scoring of the sentencing guidelines is

not cognizable on federal habeas review.  See e.g., *Coleman v. Curtin*,

425 F. App'x 483, 484-85 (6th Cir. 2011); *Howard v. White,* 76 F. App'x

52, 53 (6th Cir. 2003); *Adams v. Burt*, 471 F. Supp. 2d 835, 844 (E.D.

Mich. 2007) ("[A] claim that the trial court mis-scored offense variables

in determining the state sentencing guidelines is not cognizable on

45

habeas corpus review."); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). Only federal constitutional questions are cognizable on federal habeas review. 28 U.S.C. §§ 2241(c)(3), 2254(a) (application for habeas writ challenging state criminal conviction may be entertained by federal court "only on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States"). Both the Supreme Court and the Sixth Circuit Court of Appeals have repeatedly held that errors in the application of state law are not to be questioned on habeas review and further that federal habeas courts should not interfere in matters of state law.

But even if this Court considers Martin's claim about OV 19, the claim is without merit for the reasons set forth by the prosecution on direct appeal (9/8/14 People's Br. on Appeal, 18-19, Mich. Ct. App. No. 319400) and by the Michigan Court of Appeals in its opinion. *Martin*, 2015 WL 3477791, at *8. While Martin may disagree with that scoring, he has not shown that the trial court relied on any materially false facts in imposing his sentence, or that the trial court relied on "extensively and materially false" information that he had no opportunity to correct.

46

*Townsend v. Burke*, 334 U.S. 736, 741 (1948). Where Martin has not demonstrated a violation of his federal constitutional rights, or that the state appellate court's denial of relief on this claim was an extreme malfunction, this Court should deny habeas relief on Martin's challenge to the scoring of OV 19.

Any claim that Martin's rights were violated by judicial fact finding not proven before a jury does not warrant habeas relief. The Michigan Court of Appeals denied relief on Martin's claim, and the Michigan Supreme Court denied his application for leave to appeal, noting in part that "[a]lthough the Court of Appeals in this case relied on *People v Herron*, 303 Mich App 392 (2013), which this Court overruled in *People v Lockridge*, 498 Mich 358 (2015), we are not persuaded that the defendant has established a threshold showing of plain error under *Lockridge* or that the questions presented should otherwise be reviewed by this Court." *People v. Martin*, 886 N.W.2d 635 (Mich. 2016).

The United States Supreme Court ruled that any fact that increases the mandatory minimum sentence for a crime is an element of the criminal offense that must be proven beyond a reasonable doubt.

*Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013). *Alleyne* is an

extension of the Supreme Court's holdings in *Apprendi v. New Jersey*,

530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004), in

which the Supreme Court held that any fact that increases or enhances

a penalty for a crime beyond the prescribed statutory maximum for the

offense must be submitted to the jury and proven beyond a reasonable

doubt. *Alleyne*, however, is inapplicable to Martin's case because

*Alleyne* "dealt with judge-found facts that raised the mandatory

minimum sentence under a statute, not judge-found facts that trigger

an increased guidelines range." See *United States v. Cooper*, 739 F.3d

873, 884 (6th Cir. 2014); see also *United States v. James*, 575 F. App'x

588, 595 (6th Cir. 2014) (collecting cases and noting that at least four

post-*Alleyne* unanimous panels of the Sixth Circuit have "taken for

granted that the rule of *Alleyne* applies only to mandatory minimum

sentences."); *Saccoccia v. Farley*, 573 F. App'x 483, 485 (6th Cir. 2014)

("But *Alleyne* held only that 'facts that increase a mandatory statutory

minimum [are] part of the substantive offense.' . . . It said nothing

about guidelines sentencing factors. . . ."). Martin's claim concerns

judicial findings that set the guideline range for his minimum sentence.

The Sixth Circuit has ruled that *Alleyne* did not decide the question whether judicial fact-finding under Michigan's indeterminate sentencing scheme violates the Sixth Amendment. See *Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013).

To the extent that Martin claims the Michigan Supreme Court relied on *Alleyne* in holding that Michigan's Sentencing Guidelines scheme violates the Sixth Amendment right to a jury trial, see *People v. Lockridge*, 870 N.W.2d 502 (2015), Martin cannot rely on a state-court decision to obtain federal habeas relief. The §2254(d) standard of review prohibits the use of lower court decisions in determining whether a habeas petitioner's federal constitutional rights were violated. See *Miller v. Straub*, 299 F. 3d 570, 578-79 (6th Cir. 2002). "The Michigan Supreme Court's decision in *Lockridge* does not render the result 'clearly established' for purposes of habeas review." *Haller v. Campbell*, 2016 WL 1068744, at *5 (W.D. Mich. Mar. 18, 2016). See also *Hullihen v. Klee*, 2017 WL 676490, at *10 (W.D. Feb. 21, 2017); *Vasquez v. Burt*, 2017 WL 393314 (W.D. Mich. Jan. 30, 2017). Also, the Michigan Supreme Court expressly determined that Martin was not entitled to relief under *Lockridge*. That determination—that relief was

49

not warranted under Michigan law—is entitled to deference on federal habeas review.  In the end, relief is not warranted on Martin's third and fourth habeas claims.

## IV.   Martin's remaining claims do not warrant habeas relief because they are procedurally defaulted and lack merit. Martin also is not entitled to an evidentiary hearing.

In his fifth, sixth, and seventh claims, Martin asserts that his trial counsel was incompetent and failed to properly and effectively investigate and prepare for his defense, that the prosecution and judge engaged in misconduct, and that the trial court erred in the jury instructions.  Martin raised these claims in his pro per supplemental brief on appeal but the Michigan Court of Appeals denied relief, as follows:

> Defendant's brief consists of a lengthy string of legal principles and citations that cover nearly every area of criminal law and lists several standards of review. Defendant does not discuss the proceedings that occurred below or attempt to apply any of the legal principles he cites to the instant case. In other words, defendant has not provided anything in his argument sections for this Court to review. *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or

50

reject his position."). Nevertheless, we will try to address defendant's arguments.

## A. PROSECUTORIAL ERROR

"To prevail on a claim of prosecutorial error, a defendant, in general, must demonstrate that he or she was denied a fair and impartial trial." *People v Bosca*, __ Mich App __; __ NW2d __ (Docket No. 317633, issued March 26, 2015), slip op, p. 11 (internal citations omitted).

Defendant writes: "The prosecutor acted in bad faith intentionally, just to get a conviction, where his evidence didn't support his made up lies, he tried to sculpt to be fact knowing they were false and very whimsical and it came down to a credibility contest, the prosecutor's comments were prejudicial to me, the defendant, receiving a fair trial where the jury now may have took into consideration the comments of the prosecution in making their verdict." It is true that "[a] prosecutor's role within our judicial system is to seek justice and not merely to convict." *People v Meissner*, 294 Mich App 438, 455; 812 NW2d 37 (2011). However, we are at a loss for how to analyze this alleged claim of error. Defendant's brief provides no guidance.

## B. JURY INSTRUCTIONS

During deliberations, the jury sent a note to the trial court that stated "we would like the date of the shakedown and when they took the typewriter" and "Marshall's testimony." In response, the trial court allowed Marshall's testimony to be played back for the jury. As to when the shakedown and confiscation occurred, the court, the prosecution, and defendant's counsel recognized that defendant testified that his typewriter was taken on April 27th, and that either Marshall or Johnston testified that the typewriter was taken on May 2nd or 3rd. Given this conflict in the testimony, the court decided that it would be improper to provide a definitive answer to the question, and instead

instructed the jury that he could not answer with a specific date and that the jury was to "rely on your own individual memories of the trial."

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995)

> The trial court's authority to comment on the evidence encompasses the power to summarize the evidence relating to the issues, call the jury's attention to particular facts and point out the important testimony so as to lead the jury to an understanding of its bearings. The trial court's comments must be fair and impartial and the court should not make known to the jury its own views regarding disputed factual issues, the credibility of witnesses, or the ultimate question to be submitted to the jury[.] [*People v Anstey*, 476 Mich 436, 453–54; 719 NW2d 579 (2006) (internal quotation marks and citations omitted).]

Contrary to defendant's assertions, the judge did not "foreclose the possibility of the jury rehearing the testimony in order to help them remember and understand it and to aid them in resolving [ ] disagreements ..." The jury did not request when Marshall said he confiscated the typewriter; instead, they asked for "the date of the shakedown and when they took the typewriter." The trial court correctly recognized that it could not answer that question because there was conflicting testimony as to when these events occurred. The "important information" (when Marshall said he confiscated the typewriter) was not kept from the jury by the trial court's ruling, because Marshall's testimony containing this information was in fact replayed for the jury.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

52

Defendant writes that "[i]t is clearly factual and blatant that counsel failed to protect me, his client, by failing to object to erroneous and prejudicial bias actions of the judge and prosecutor." Because we have found no errors, it cannot be said that defense counsel was ineffective in failing to object to the alleged claims of error. "[D]efense counsel is not required to make frivolous or meritless motions ... or objections." *People v Knapp*, 244 Mich App 361, 386; 624 NW2d 227 (2001).

*Martin*, 2015 WL 3477791, at *8-10.

As an initial matter, Martin's fifth-through-seventh claims are procedurally defaulted[8] because he failed to adequately brief them on direct appeal. Martin effectively abandoned the issues. The principle of abandonment constitutes a procedural default. See e.g., *Dyer v. Palmer*, 2011 WL 739086, at *18 (E.D. Mich. 2011). When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is precluded unless the petitioner can demonstrate good cause for the default and actual prejudice, or can show that failure to

---

[8] "[P]rocedural default results where three elements are satisfied: (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

consider the claim will result in a "fundamental miscarriage of justice."
*Coleman v. Thompson*, 501 U.S. at 722, 750-51 (1991).  This is the
petitioner's burden.  *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999)
(citing *Coleman*, 501 U.S. at 754).  Martin has failed to allege or
establish good cause to excuse his procedural default and actual
prejudice, and he cannot show that failure to review the claim will
result in a fundamental miscarriage of justice.[9]  But even if the
underlying claims are considered they do not merit habeas relief.

Martin has also failed to show that the prosecution engaged in
misconduct at his trial.  Habeas petitioners must clear a "high bar" to
win a prosecutorial misconduct claim.  See *Stewart v. Trierweiler*, 867
F.3d 633, 638 (6th Cir. 2017).  Prosecutorial misconduct may form the
basis for habeas relief only if the alleged misconduct "'so infected the

---

[9] The narrow exception for fundamental miscarriages of justice is
reserved for the extraordinary case in which the alleged constitutional
error probably resulted in the conviction of one who is actually innocent
of the underlying offense.  *Dretke v. Haley*, 541 U.S. 386, 388 (2004);
*Murray v. Carrier*, 477 U.S. 478, 496 (1986).  A claim of actual
innocence "requires [the] petitioner to support his allegations of
constitutional error with new reliable evidence—whether it be
exculpatory scientific evidence, trustworthy eyewitness accounts, or
critical physical evidence—that was not presented at trial."  *Schlup v.
Delo*, 513 U.S. 298, 324 (1995).  Martin has not met this exacting
standard.

trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  When reviewing the statements in question, a habeas court must focus on "the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  "To constitute a denial of due process, the misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *Byrd v. Collins*, 209 F.3d 486, 529-30 (6th Cir. 2000) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)).  Martin alleged a variety of alleged misconduct but, as the Michigan Court of Appeals reasonably determined, he failed to establish the factual predicate for his claims.  Stated differently, Martin has not established any misconduct by the prosecution and his conclusory and unsupported assertions do not merit relief.  The same goes for his allegations of judicial misconduct: Martin has not shown that the trial judge in his case committed any misconduct whatsoever.

Nor has Martin established error in the trial court's jury instructions.[10]  Jury instructions in state trials are generally matters of state law and procedures not involving federal constitutional issues and are not reviewable in a federal habeas proceeding.  *Nickerson v. Lee*, 971 F.2d 1125, 1137 (4th Cir. 1992).  And habeas corpus is not available to remedy a state court's error in the application of state law.  *Estelle*, 502 U.S. at 67-68.  The burden of establishing that an instructional error is deserving of habeas relief is on the petitioner and it is a particularly heavy one.  In order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, the petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair.  *Estelle*, 502 U.S. at 72; *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly."  *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

---

[10] To the extent that Martin's claim is based on a perceived violation of state law, it is not cognizable upon federal habeas review.

Here, the Michigan Court of Appeals reasonably determined that the trial court did not error in the manner in which it responded to the jury's note about the date it sought and about Marshall's testimony. Given Martin's failure to establish a violation of his rights or, more importantly, that the Michigan Court of Appeals' ruling was a malfunction—let alone an extreme one—habeas relief on his jury instruction claim is not warranted. Stated differently, Martin has not met his high burden of showing that there is "no reasonable dispute" the state appellate court was wrong. *Woods*, 135 S. Ct. at 1376.

Martin also has not established that his trial counsel was ineffective or that the state appellate court's ruling was an extreme malfunction. The precedent relevant to Martin's ineffective-assistance-of-trial-counsel claims is *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. Under *Strickland*, the petitioner must show that his trial counsel's performance was deficient and that he was prejudiced by that deficient performance. *Strickland*, 466 U.S. at 687-88. Regarding the first prong, judicial scrutiny of counsel's performance must be "highly deferential" and a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance." *Strickland*, 466 U.S. at 689.  It is

"[r]are" that constitutionally competent representation will require "any

one technique or approach." *Pinholster*, 563 U.S. at 195 (citing *Richter*,

562 U.S. at 106).  The "absence of evidence" cannot overcome the strong

presumption that counsel's conduct fell within the wide range of

reasonable professional assistance. *Titlow*, 134 S. Ct. at 17 (internal

quotations omitted).  To meet the second prong, the petitioner must

show that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been

different." *Strickland*, 466 U.S. at 694.  The "likelihood of a different

result must be substantial, not just conceivable." *Richter*, 562 U.S. at

112. *Strickland's* test for prejudice is "a demanding one." *Storey v.

Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011).

    "Surmounting *Strickland's* high bar is never an easy task."

*Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010).  On habeas, a federal

court's review of a state court's ruling on an ineffective-assistance-of-

counsel claim is "particularly deferential." *McMullan v. Booker*, 761

F.3d 662, 673 (6th Cir. 2014).  A federal court on habeas review does not

apply *Strickland* directly; rather, "[t]he pivotal question is whether the

state court's application of the *Strickland* standard was unreasonable."
*Id.* (citing *Richter*, 562 U.S. at 101).  The combination of the highly
deferential standards of *Strickland* and of § 2254(d) makes for "doubly
deferential judicial review."  *Id.* (citing *Knowles v. Mirzayance*, 556 U.S.
111, 123 (2009)).  And because the *Strickland* rule is a general one, the
state courts have "even more latitude to reasonably determine that a
defendant has not satisfied that standard."  *Mirzayance*, 556 U.S. at
123; *see also Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)
("[E]valuating whether a rule application was unreasonable requires
considering the rule's specificity.  The more general the rule, the more
leeway courts have in reaching outcomes in case-by-case
determinations.")   The *Strickland* rule is "as general as they come."
*Davis v. Carpenter*, 798 F.3d 468, 473 (6th Cir. 2015).

Martin has failed to show that the Michigan Court of Appeals
unreasonably applied *Strickland* or that it unreasonably determined
the facts.  Instead, the Michigan Court of Appeals reasonably
determined that he failed to meet the factual predicate of his claim.
The record supports that finding: trial counsel was familiar with the
facts of Martin's case and counsel thoroughly questioned the

prosecution witnesses, counsel called witnesses on behalf of the defense, and counsel vigorously argued on Martin's behalf to create reasonable doubt regarding his guilt.  Martin has not overcome the strong presumption that trial counsel was competent, or shown the requisite prejudice with respect to his claims.  That Martin was ultimately convicted does not mandate a finding that trial counsel was constitutionally ineffective.

Martin is also not entitled to a hearing in this Court.  The Supreme Court has held that where a state court has adjudicated a claim on the merits an evidentiary hearing in the district court is precluded.  In *Pinholster*, 563 U.S. at 185, the Supreme Court explained that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before the state court."  In other words, district courts are precluded from conducting evidentiary hearings to supplement existing state court records when a state court has issued a decision on the merits with respect to the claim at issue.  In *Pinholster*, the Supreme Court found that the Ninth Circuit erred in considering evidence elicited during a federal evidentiary hearing in the district

court in determining whether a state court decision was unreasonable. *Id*. at 186. *Pinholster* commands that a federal habeas court must determine based only on the record before the state court whether a state-court merits ruling is objectively unreasonable. Although *Pinholster* specifically addressed subsection (d)(1), subsection (d)(2), by its terms, also requires a federal court to limit its review to the record that was before the state court. See 28 U.S.C. § 2254(d)(2). *Pinholster* did not recognize an exception for cases where the petitioner was diligent in seeking a hearing in state court, nor did it premise its holding that review is limited to the state-court record on the adequacy of such record.

The Sixth Circuit followed suit in *Ballinger v. Preslesnik,* 709 F.3d 558 (6th Cir. 2013), where it rejected the argument that a state-court decision is not on the merits under AEDPA if the petitioner did not get an evidentiary hearing in state court. Citing *Pinholster*, the Sixth Circuit noted that "district courts are precluded from conducting evidentiary hearings to supplement existing state court records when a state court has issued a decision on the merits with respect to the claim at issue." *Ballinger*, 709 F.3d at 561. This is true even where the

petitioner unsuccessfully sought an evidentiary hearing in the state

appellate system.  In *Ballinger*, the petitioner was denied an

evidentiary hearing on his ineffective-assistance claim by the Michigan

Court of Appeals, who went on to deny his claim on the record before it.

But the district court held an evidentiary hearing and granted habeas

relief.  The Sixth Circuit reversed, finding that the district court erred

in holding an evidentiary hearing on the petitioner's ineffective-

assistance claim where the state court considered the claim on the

merits.  *Id.* at 561-63.  The Sixth Circuit explained that:

> While allowing a petitioner to supplement an otherwise
> sparse trial court record may be appealing, especially where
> he diligently sought to do so in state court, the plain
> language of *Pinholster* and *Harrington* precludes it.

*Ballinger*, 709 F.3d at 652.  The Sixth Circuit disregarded the evidence

taken at the district court hearing, applied AEDPA deference to the

state court's decision, and found that it was not unreasonable.

Because the Michigan Court of Appeals denied Martin's claims on

the merits, a hearing in this Court is precluded under *Pinholster* and

*Ballinger*.  See also *Bourne v. Curtin*, 666 F.3d 411, 415 (6th Cir. 2012)

(finding petitioner was not entitled to an evidentiary hearing because

the state courts adjudicated his claim on the merits and, under

*Pinholster*, petitioner was "stuck with 'the record that was before the

state court'").[11]  Because the state court decided Martin's claims on the

merits, he should not be permitted to expand the record or strip the

---

[11] Given *Ballinger*, this Court should also reject any attempt by Martin
to portray the state court ruling in his case as something less than a
merits-adjudication because he did not have a hearing in state court.
See also *Loza v. Mitchell*, 766 F.3d 466, 494-95 (6th Cir. 2014) (finding
that petitioner's claim was adjudicated on the merits in state court
despite the state court's decision not to hold an evidentiary hearing);
*Lint v. Prelesnik*, 542 F. App'x 472, 482 (6th Cir. 2013) (rejecting
argument that state-court opinion was not a merits decision because
state court denied petitioner an evidentiary hearing, and noting that
absence of an evidentiary hearing at state-court level does not change
fact that state court considered the claim on the merits, and that its
decision should be afforded AEDPA deference); *Cowans v. Bagley*, 639
F.3d 241, 248 (6th Cir. 2011) ("[n]othing in § 2254(d)(2) . . . suggests we
defer to a state court's factual findings only if the state court held a
hearing on the issue" and there is no text in the statute requiring a
hearing).

Martin also cites no per se rule requiring a state court to conduct a post-
conviction evidentiary hearing to resolve every factual dispute, and
nothing in the AEDPA or Supreme Court precedent suggests that a
federal habeas court defer to state court factual findings only if the
state court held a hearing to determine the facts.  And, as the Sixth
Circuit has found, there is no clearly established Supreme Court law
that recognizes a constitutional right to a state-court evidentiary
hearing to develop a claim of ineffective assistance of counsel, even on
direct appeal.  *Hayes v. Prelesnik*, 193 F. App'x 577, 584-85 (6th Cir.
2006).  Whether Martin was entitled to a hearing under *People v.
Ginther,* 212 N.W.2d 922 (1973) or any other Michigan case is a matter
of state law.  *Ezell v. Cason*, 2007 WL 518853 at *7 (W.D. Mich. Feb. 14,
2007).

state-court ruling of deference on federal habeas review. Martin's claims may also be denied on the existing record, as noted above.

Finally, Martin in November 2017 filed with this Court a one-page pleading titled "Newly Discovered Evidence." But Martin fails to make any argument in this pleading and he fails to establish that what he states in the pleading warrants the extraordinary remedy of habeas relief.[12]

---

[12] To the extent Martin is attempting to raise a freestanding claim of actual innocence such a claim is not cognizable on federal habeas review. In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Id.* Freestanding claims of actual innocence are not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. *Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007) (collecting cases). The Supreme Court's subsequent decision in *House v. Bell*, 547 U.S. 518 (2006), did not change this, as in that case the Supreme Court again declined to resolve whether a habeas petitioner may bring a freestanding claim of actual innocence. *Id.* at 554-55. Although the Supreme Court in *House* noted that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim," *Id.* (quoting *Herrera*, 506 U.S. at 417), the Supreme Court declined to recognize a freestanding innocence claim in habeas corpus, outside of the death-penalty context.

## CONCLUSION

Martin procedurally defaulted his claim alleging ineffective assistance of trial counsel, prosecutorial and judicial misconduct, and error in the jury instructions because he failed to properly brief those claims on direct appeal.  And because Martin has not shown good cause to excuse the default and actual prejudice, or that failure to review the defaulted claims would result in a fundamental miscarriage of justice, habeas review of his defaulted claims should be precluded.  But even if this Court bypasses Martin's default and considers the claims, Martin has not established that the claims warrant the extraordinary remedy of habeas relief, as detailed above.

The Michigan Court of Appeals' rejection of Martin's claims on the merits did not result in a decision that was contrary to or an unreasonable application of clearly established Supreme Court law, or an unreasonable determination of the facts.  Martin was "entitled to a fair trial but not a perfect one."  *Lutwak v. United States*, 344 U.S. 604, 619 (1953); *see also United States v. Hajal*, 555 F.2d 558, 569 (6th Cir. 1977) ("[W]e have yet to review a perfect jury trial.").  The state appellate court decision in this case was not "so lacking in justification"

that it resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. The formidable threshold for granting habeas relief has not been met because fairminded jurists could disagree on the correctness of the state appellate court's decision. *Yarborough*, 541 U.S. at 664. Consequently, habeas relief should be denied.

And the State asserts that Martin is not entitled to habeas relief because he has not established that the alleged errors had a substantial and injurious effect on the verdict in this matter. *See Brecht v. Abrahamson*, 507 U.S. 619 (1993).

The State opposes any requests for bond, discovery,[13] oral argument, or any other relief, including a certificate of appealability

---

[13] Unlike typical civil litigants, "[h]abeas petitioners have no right to automatic discovery." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). Rule 6(a) permits district courts to authorize discovery in habeas corpus proceedings under the Federal Rules of Civil Procedure only "for good cause." R. Governing 2254 Cases in the U.S. Dist. Cts. 6(a). "Rule 6 embodies the principle that a court must provide discovery in a habeas proceeding only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997)). "Rule 6 does not 'sanction fishing expeditions based on a petitioner's conclusory allegations.'" *Williams*, 380 F.3d at 974 (quoting *Rector v. Johnson*, 120 F.3d 551, 562

(COA) so as to proceed further if this Court denies the petition.  To

obtain a COA, a petitioner must make "a substantial showing of the

denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To demonstrate

this denial, the petitioner is required to show that reasonable jurists

could debate whether, or agree that, the petition should have been

resolved in a different manner, or that the issues presented were

adequate to deserve encouragement to proceed further.  *Slack v.*

*McDaniel*, 529 U.S. 473, 483-84 (2000); *see also Miller-El v. Cockrell*,

537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner

must 'sho[w] that reasonable jurists could debate whether (or, for that

matter, agree that) the petition should have been resolved in a different

manner or that the issues presented were adequate to deserve

encouragement to proceed further.") (citations omitted).

　　　When a district court rejects a habeas petitioner's constitutional

claims on the merits, the petitioner must demonstrate that reasonable

jurists would find the district court's assessment of the constitutional

---

(5th Cir. 1997)); Habeas Rule 6(a).  "Conclusory allegations are not
enough to warrant discovery under Rule 6; the petitioner must set forth
specific allegations of fact."  *Williams*, 380 F.3d at 974 (internal
quotation marks and citation omitted).  Martin has not met this burden.

claims to be debatable or wrong. *Slack*, 529 U.S. at 483-84. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claims, a COA should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id*. at 484.

When a plain procedural bar is present, and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id*. Martin has not established that a COA is warranted in this case.

68

## RELIEF

For the reasons stated above, the State respectfully asks this Honorable Court to deny the petition and to deny any other relief that Martin seeks, including but not limited to any requested discovery, evidentiary hearings, bond, oral argument, and a certificate of appealability.

Respectfully submitted,

Bill Schuette
Attorney General

s/Raina Korbakis

Assistant Attorney General
Criminal Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
korbakisr@michigan.gov
P49467

Dated: January 10, 2018
2017-0189437-A/Martin, Roscoe/Answer in Opposition to Petition for Writ of Habeas Corpus

## CERTIFICATE OF SERVICE

I certify that on January 10, 2018, I electronically filed the

foregoing papers with the Clerk of the Court using the ECF system

which will send notification of such filing to the following:

> HONORALBE JANET T. NEFF
> MAGISTRATE JUDGE ELLEN S. CARMODY

and I certify that Juliana Lindeman has mailed by United States Postal

Service the papers to the following non-ECF participant:

> ROSCOE MARTIN #204375
> GUS HARRISON CORRECTIONAL FACILITY
> 2727 EAST BEECHER STREET
> ADRIAN, MI 49221

Respectfully submitted,

Bill Schuette
Attorney General

s/Raina Korbakis

Assistant Attorney General
Criminal Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
korbakisr@michigan.gov
P49467