UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ROSCOE MARTIN #204375,

                        Petitioner,           Case No. 1:17-cv-582

v.                                      Honorable Janet T. Neff

WILLIE O. SMITH,

                        Respondent.

_____/

## REPORT AND RECOMMENDATION

       This is a state prisoner's habeas corpus action brought under 28 U.S.C. § 2254. Petitioner Roscoe Martin is incarcerated with the Michigan Department of Corrections (MDOC) at the Thumb Correctional Facility in Lapeer, Michigan. Following a jury trial in the Marquette County Circuit Court, Petitioner was convicted of extortion pursuant to Mich. Comp. Laws § 750.123. On November 27, 2013, the court sentenced Petitioner to a prison term of 7 to 30 years, consecutive to the existing 50-to-76-year sentence that Petitioner was serving when he committed the extortion.

       On June 26, 2017, Petitioner timely filed his habeas corpus petition.

       The petition raises seven grounds for relief, as follows:

    I.      [Petitioner's] conviction should be overturned because there was insufficient credible evidence at trial to prove [Petitioner] guilty of the crime.

    II.     The trial court denied [Petitioner] a fair trial and his due process rights by denying to allow the hiring of experts to attempt to prove the extortion letters were not made on [Petitioner's] typewriter and the letters had not gone through the mail room; and the trial court forbidding Petitioner to call a number of MDOC witnesses.

    III.    [Petitioner's] sentence was invalid because it was based on inaccurate information, i.e., improper scoring of the legislatively imposed sentencing

guidelines, use of an incorrect burden of proof, and insufficient facts; therefore[,] his due process rights were violated.

IV.    Whether correctly scoring the guidelines would require resentencing.

V.    [Petitioner's] conviction should be overturned because there was insufficient credible evidence at trial to prove Petitioner guilty of the crime and the trial attorney's incompetence failing to familiarize himself with the police report, preliminary pretrial transcripts before trial, to properly and effectively prepare [Petitioner's] defense and investigate to prove the state's witnesses were perjuring themselves and the judge and prosecutor knew and allowed it into records as if it was fact in front of [Petitioner's] jury at trial violating [Petitioner's] due process.

VI.    The trial court denied [Petitioner] a fair trial and violated all of [Petitioner's] state and federal constitutional rights by denying the jury to review all of the evidence excluded and Lincoln Marshall's entire testimony included with [Petitioner's] . . . included with the Michigan State Police report authored by Detective/Sgt. Todd Johnston and the other state's witnesses testimony which would have casted [sic] doubt on their credibility and would have resulted in a not guilty verdict.

VII.    [Petitioner] is entitled to a *Ginther* hearing, *Franks* hearing, and evidentiary hearing because of the many procedural, plain, and structural errors committed by three separate attorneys, the judge and prosecutor; [Petitioner's] trial attorney failed to effectively protect my state and federal constitutional rights as well as two separate judges and two other prosecutors at preliminary, pretrial, and at trial knowingly allowing perjured testimony that's part of records that's not fact in accord with preponderance of the evidence of real facts that was [sic] excluded, the prosecutor failed to discover upon request and acted in bad faith and conducted malicious prosecution and prosecutorial misconduct and the judge failed to abide by canon laws 1, 2, and 3, which is judicial misconduct and [Petitioner's] three separate lawyers were ineffective, cases are dismissed, reversed and remanded for such.

(Pet., ECF No. 1, PageID.2–4.)  Respondent has filed an answer to the petition (ECF No. 10) stating that the motion should be denied as to each ground because they are without merit or procedurally defaulted.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), the undersigned recommends that the Court grant habeas relief on the sentencing claim but deny habeas relief as to all the other claims.

2

## Discussion

### I.    Factual Allegations

In May 2011, Petitioner was incarcerated with the MDOC at the Marquette Branch Prison (MBP).  On May 2, 2011, Lincoln Marshall, the inspector at MBP, intercepted two sealed letters from a prisoner to Corrections Officer Gail O'Dell.  (Trial Tr. I, ECF No. 15-11 at PageID.1031, 1038.)  The letters were marked "confidential" with no return address, but contained a "B" on them, indicating that they came from the block B mailbag.  (*Id.* at  PageID.1031, 1040.)  Marshall intercepted the letters as part of an "inquiry" into whether O'Dell had become overly familiar with some prisoners.  (*Id.* at PageID.1036.)  The letters instructed O'Dell to send money to a certain address and threatened that if she did not comply the sender would publicly accuse her of criminal activity.  (*Id.* at PageID.1031.)  Marshall made copies of the letters.  He sent copies to O'Dell to see if she would turn them in and to better assess the truth of the letter's allegations.  (*Id.* at PageID.1124–26.)  Marshall interviewed Petitioner about the letters based on information that he received from O'Dell.  (*Id.* at PageID.1071.)

O'Dell testified that she received letters from Petitioner on different dates.  Petitioner told O'Dell that he had sent the first letter and asked her to retrieve it from the mailbox because he realized that prison employees did not have personal mailboxes.  O'Dell read Petitioner's allegations in the first letter and threw it away.  (*Id.* at PageID.1086–89.)  The letter stated that Petitioner knew O'Dell was engaging in inappropriate acts with prisoners.  (*Id.* at PageID.1093–94.)  O'Dell then received another letter that alleged she had set up a hit on an inmate who had been stabbed in the eye.  The letter threatened to accuse O'Dell of setting up the stabbing if O'Dell did not send $10,000 to an attorney named Gerald Lorence.  (*Id.* at PageID.1095–96, 1098–99.)  O'Dell believed that Petitioner had written the letter based on the similarities between that letter and the first one she had received.  (These were the same letters that Marshall had intercepted.)

3

She testified that the second letter was typed in the same format as the first.  O'Dell gave that letter to Marshall and told him she believed Petitioner had sent it.  (*Id.* at 1095–97.)

Michigan State Police Lieutenant Todd Johnston investigated the case.  Johnston testified that Marshall provided him two letters with envelopes written by an unknown inmate that appeared to be extortion letters.  (Trial Tr. II, ECF No. 15-12 at PageID.1148.)  He interviewed O'Dell and another inmate on May 5, 2011, and Petitioner on a later date.  At his request, corrections officers searched Petitioner's cell and found an envelope addressed to Petitioner containing a prison employee's address written inside on the flap.  (*Id.* at PageID.1152–53.)  The address was significant because it matched an address in one of the extortion letters in which the author bragged that he knew the address of another prison employee.  (*Id.* at PageID.53.)  In an interview, Petitioner admitted that the address was in his handwriting and that he had written it.  Johnston also obtained a DNA sample from Petitioner.  (PageID.1153–55.)  In addition, Johnston contacted attorney Lorence, who confirmed that Petitioner had contacted him in 2009 to work on an appeal, but an attorney-client relationship never occurred because Petitioner never sent Lorence any money or his records.  (*Id.* at PageID.1171–72.)

Detective Peterson of the Michigan State Police, a latent fingerprint examiner, testified that a fingerprint located on one of the envelopes was matched Petitioner's right thumb.  (*Id.* at PageID1204–05.)  Heather Goff, a forensic biologist with the Michigan State Police, testified that Petitioner's DNA matched samples taken from the two envelope flaps.  (Trial Tr. III, ECF No. 15-13 at PageID.1267.)  She said that the amount of DNA on the envelopes indicated that the source was a bodily fluid, such as saliva.  (*Id.* at PageID.1284–85.)  Ms. Goff testified that the odds of matching a DNA profile for an African American are one in 1.5 quadrillion.  (*Id.* at PageID.1268.)

After the prosecution rested, Petitioner testified.  Petitioner testified that on April 27, 2011, Marshall told him that he shook down Petitioner's cell and took most of his belongings.  (*Id.* at PageID.1320.)  When he met with Marshall on May 3, Marshall told Petitioner that he wanted his help investigating a lot of officers and prisoners.  (*Id.* at PageID.1324, 1329–30.)  Petitioner testified that Marshall showed him the letters and handed him the envelopes, but Petitioner did not touch the letters.  (*Id.* at PageID.1335.)  Petitioner told Marshall he would not act as a "snitch" or a "mole."  (*Id.* at PageID.1337.)  Petitioner said that being a "snitch" is dangerous and, once other prisoners learn that a prisoner is a "snitch," there is no way to protect him from harm.  (*Id.* at PageID.1331.)  Petitioner described numerous other conversations and circumstances in which Marshall and others continued to pressure him into helping them investigate corrections employees and prisoners, including an incident that occurred two years later, in May 2013, in which Johnston drove Petitioner around the Upper Peninsula on an excursion in a pickup truck soliciting Petitioner's assistance.  (*Id.* at PageID.1345–65.)  Petitioner admitted that he had contacted attorney Lorence in 2009 or 2010 to reinvestigate his case and that attorney Lorence had requested a $2,000 retainer, but Petitioner never hired him.  (*Id.* at PageID.1415.)  He denied writing or sending the letters.  (*Id.* at PageID.1416.)

The jury deliberated for about six hours over two days before returning its verdict.  On direct appeal to the Michigan Court of Appeals, Petitioner raised the first four of his seven issues through counsel and raised the remaining three issues in a Standard 4 brief.  By unpublished opinion issued on June 2, 2015, the Michigan Court of Appeals affirmed Petitioner's conviction and sentence.  (Mich. Ct. App. Op., ECF No. 11-2 at PageID.149–159.)

Petitioner then filed a pro per application for leave to appeal to the Michigan Supreme Court, raising the same seven issues he had raised in the court of appeals, as well as several new

claims alleging that he had the right to testify at a competency hearing and that one of the jurors knew some of the State's witnesses. (*Id.* at PageID.313–22.) By order entered November 2, 2016, the Michigan Supreme Court denied the application, noting in part that although the court of appeals had relied on *People v. Herron*, 303 Mich. App. 392 (2013), which had been overruled by *People v. Lockridge*, 498 Mich. 358 (2015), the court was not persuaded that Petitioner had made a threshold showing of plain error under *Lockridge* or that the questions presented should be reviewed. (ECF No. 11-3 at PageID.306.)

Petitioner did not file a petition for a writ of certiorari in the United States Supreme Court. However, he returned to the trial court and filed a motion for relief from judgment, where he raised several claims. The trial court denied the motion because it plainly appeared that Petitioner was not entitled to relief. (Trial Ct. Feb. 9, 2017 Order, ECF No. 11-5.) Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals, which the court denied because Petitioner failed to establish that the trial court erred in denying his motion for relief from judgment. (Mich. Ct. App. June 28, 2017 Order, ECF No. 11-6 at PageID.443.) Petitioner did not appeal the denial of his delayed application to the Michigan Supreme Court. (ECF No. 11-7.)

## II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28

U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their

adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III.    Sufficiency of the Evidence (Issue I and part of Issue V)[1]

A Section 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.* The habeas court may not review issues of credibility under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction in the light most favorable to the prosecution with specific reference to

---

[1] Respondent asserts that the Court should decline to review Petitioner's petition under the concurrent sentence doctrine.  (ECF No. 10 at PageID.83–84.)  This doctrine is inapplicable here because Petitioner's extortion sentence is consecutive to his existing sentence.  *See Ray v. United States*, 481 U.S. 736, 737 (1987) (per curiam).

the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).  This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds.  *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Although it relied on Michigan law, the Michigan Court of Appeals applied the *Jackson* standard when it rejected Petitioner's claim of insufficient evidence:

> "A claim of insufficient evidence is reviewed de novo, in a light most favorable to the prosecution, to determine whether the evidence would justify a rational jury's finding that the defendant was guilty beyond a reasonable doubt." *People v. McGhee*, 268 Mich. App 600, 622; 709 NW2d 595 (2005).  All factual conflicts in the evidence must be resolved in favor of the prosecution.  *People v. Wolfe*, 440 Mich. 508, 515; 489 NW2d 748, modified on other grounds 441 Mich. 1201 (1992). "[T]he issue of credibility is for the jury to decide and we will not resolve credibility issues anew on appeal." *People v. Milstead*, 250 Mich. App 391, 404; 648 NW2d 648 (2002).  Thus, this Court "is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v. Nowack*, 462 Mich. 392, 400; 614 NW2d 78 (2000).
>
> Defendant points to "mitigating" evidence that created a "reasonable doubt" whether defendant committed the crime of extortion.  For example, he contends that he could not have known details about the Upper Peninsula had he not been driven around by the authorities when they were attempting to get him to act as an informant.  He also points to the fact that his typewriter ribbon was missing from his cell and that there was confusion as to whether and how Marshall created duplicate envelopes when he sent the letters on to O'Dell.  Defendant argues that

another prisoner could have borrowed envelopes from defendant that contained defendant's DNA and fingerprints and that defendant was not necessarily the only person who knew of the attorney in the Lower Peninsula.  Defendant further points to the lack of video evidence showing him depositing anything in the mailbox.

Defendant's argument is simply an effort to have this Court reweigh the evidence and make credibility determinations in his favor.  Defendant's argument at trial was that he did not write or send the letters and that he was subjected to a false accusation that was made for the purpose of coercing him into become an informant.    The jury, having convicted defendant of extortion, necessarily determined that the investigators, correctional officers, police officers, and forensic pathologists were credible and that defendant was not.  This Court may not interfere with the jury's credibility determination.  *Nowack*, 462 Mich. at 400; *Milstead*, 250 Mich. App at 404.

A rational jury could conclude from the trial testimony that defendant was guilty of extortion.  Defendant had sent O'Dell a letter in the past.  There was DNA evidence connecting defendant to the envelopes.  Additionally, defendant admitted that he had been in contact with the attorney mentioned in the extortion letters.  Accordingly, the evidence, viewed in the light most favorable to the prosecution, was sufficient to support defendant's conviction.

(ECF No. 11-2 at PageID.151–52.)

Petitioner's argument is not easy to follow, but he primarily asserts that the prosecution allowed its witnesses to present perjured testimony and fabricated or falsified exhibits.  To the extent Petitioner intends to argue that the prosecution's witnesses were simply incredible, and the jury should have accepted his version of the facts, his argument misses the point.  Credibility was an issue for the jury.  *Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017) ("[W]e do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury . . . we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution.").  As the Michigan Court of Appeals noted, there was sufficient evidence to show that Petitioner sent the letters to O'Dell with the intent to extort money from her.  That determination is not contrary to, nor an unreasonable application of, the *Jackson* standard.  In addition, the court's factual determinations upon which it is based are reasonable.  Accordingly, Petitioner's challenge to the sufficiency of the evidence lacks merit.

## IV.   Right to Present a Defense (Issue II)

Petitioner contends that the trial court denied him a fair trial when it denied his motions to obtain a court-appointed typewriter expert and a court-appointed handwriting expert.  Petitioner also argues that the trial court denied him a fair trial when it granted the prosecution's motion in limine to prevent Petitioner from calling a number of MDOC witnesses.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations and internal quotation marks omitted).  The Sixth Circuit has explained:

> [A] "meaningful opportunity" is not "every opportunity," and relevant evidence is frequently excluded from trial.  Trial judges must make "dozens, sometimes hundreds" of evidentiary decisions throughout the course of a typical case, and rarely are these of constitutional significance: "the Constitution leaves to the judges who must make these decisions 'wide latitude' to exclude evidence that is 'repetitive . . ., only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'"  *Crane*, 476 U.S. at 689-90, 106 S. Ct. 2142 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986)) (alterations and omissions in original).  But while the Constitution leaves much in the hands of the trial judge, "an essential component of procedural fairness is an opportunity to be heard."  *Id.* at 690, 106 S. Ct. 2142.

*Gagne v. Booker*, 596 F.3d 335, 340-41 (6th Cir. 2010).  A proper inquiry into the constitutionality of a trial court's decision to exclude evidence begins with considering the relevancy and cumulative nature of the excluded evidence, and the extent to which it was "central" or "indispensable" to the defense.  *Id*. at 341.  Against this a court must balance the state's interests in enforcing the evidentiary rule on which the exclusion was based.  *Id.*

### A.   Expert-Witness Claim

Regarding the denial of expert witness fees, the Michigan Court of Appeals wrote:

The trial court provided a detailed explanation for its decision to deny defendant's motion, as follows:

> Well, first, as to the request for expert witnesses, under ... MCL 775.15, the Court does have discretion to fund expert witnesses, provided that the indigent defendant is able to show there is a material witness in his favor, without whose testimony he cannot safely proceed to trial. And certainly Mr. Martin, being an inmate with the Department of Corrections, is indigent. However, the appointment of an expert witness, or authorizing retention of an expert witness at public expenses, is discretionary with the Court under *People versus Jacobson* at 448 Mich. 639. And the defendant must demonstrate a nexus or connection between the facts of the case and the need for an expert.
>
> Now, in this case, although it sounds like the prosecution does not dispute that a typewriter ribbon or typewriter may have been taken from Mr. Martin's cell, I'm hearing no connection between that typewriter and the ribbon to any evidence the People intend to prove in this case. Now—Nor do the People intend to call, at least as Mr. Griffin says, any expert witness connecting up either the typewriter or the typewriter ribbon with this case. So recognizing this is a discretionary call, I'm going to deny the motion for funds to retain a typewriter or typewriter ribbon expert.
>
> Now, in the event this case proceeds on to trial, and the People call in any—or offer any evidence related to the typewriter ribbon, any opinion evidence, that in that event, I would certainly consider a mistrial, if the defendant is not expected to meet any of that evidence. Now, having said that, if the People intend to offer simply factual evidence that—and I don't know if these letters at issue were typed or not, but if they intend to offer into evidence the fact that a typewriter was removed from Mr. Martin's cell, and no opinion evidence is offered that these items were written on that particular typewriter, I don't regard that fact evidence, that Mr. Martin had access to a typewriter, to be opinion evidence that would call for any kind of expert testimony. And with that understanding, I'm going to deny the defense motion for retention of a typewriter or ribbon expert.
>
> In terms of the handwriting expert analysis, apparently the question goes to how—what I'll call, for lack of a better term, in-house mail is handled within the prison system, how it is processed. That again does not seem to me to fall within the ambit of expert opinion testimony of handwriting identification as much as it does the process by which mail is processed, both in-house mail or outside mail coming in. And it seems to me that does not fall within the

realm of expert opinion testimony. And in terms of the need for such testimony, to somehow or another, by way of a handwriting opinion, that the investigating—Department of Corrections Investigator Lincoln Marshall somehow or another is lying in his preliminary exam testimony, other than the boldfaced assertion that he is lying. I don't have—I don't find evidence here that, in the exercise of discretion, would show a handwriting expert is necessary for the defendant to safely proceed to trial. Nor does it sound like the People intend to offer any handwriting expert analysis opinion as part of their case in chief.

So in the exercise of discretion, I'm going to deny the defense motion for funds to retain either a typewriter or typewriter ribbon expert, or a handwriting expert in this case.

The trial court properly exercised its discretion in ruling that there was not a sufficient showing by defendant to justify public expenditures. The prosecution was not going to offer any testimony related to the typewriter or the ribbon used on it. Defendant asked for funds to hire an expert in typewriters but offered nothing more than speculation that the expert might find something helpful. As the trial court recognized, there was no "nexus between the facts of the case and the need for an expert," and there was no indication that a typewriter expert would "likely benefit" the defense. *People v. Jacobsen*, 448 Mich. 639, 641; 532 NW2d 838 (1995) ("Without an indication that expert testimony would likely benefit the defense, it was not error to deny without prejudice the motion for appointment of an expert witness."). Likewise, there was no indication that a handwriting expert would "likely benefit" the defense. Accordingly, the trial court did not abuse its discretion when it denied defendant's request for a court-appointed typewriter expert and a court-appointed handwriting expert.

Moreover, even if this Court were to assume that the trial court abused its discretion in regard to either denial, defendant cannot show that the alleged error makes it "more probable than not" that the error affected the outcome. *Benton*, 294 Mich. App. at 199. As previously discussed, there was a substantial amount of compelling evidence presented in this case, much of it scientific, to support the jury's verdict.

(ECF No. 11-2 at PageID.154–56 (footnote omitted).)

The Supreme Court has held that an indigent criminal defendant is entitled "access to the raw materials integral to the building of an effective defense," as well as the "'basic tools of an adequate defense or appeal.'" *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985) (quoting *Britt v. North Carolina*, 404 U.S. 226, 227 (1971)). However, "there is no clearly established right to the appointment of non-psychiatric expert witnesses or court appointed investigators." *Davis v.*

13

*MacLaren*, No. 17-2153, 2018 WL 4710071, at *3 (6th Cir. Apr. 3, 2018) (citing *Babick v. Berghuis*, 644 F.3d 308, 321 (6th Cir. 2011)); *see also Griffes v. Rivard*, No. 11-cv-14227, 2016 WL 7188096, at *8 (E.D. Mich. Dec. 12, 2016) (noting that "[a] number of courts have held that a habeas petitioner was not entitled to habeas relief based on a state trial court's failure to appoint a non-psychiatric expert witness, because the Supreme Court has yet to extend *Ake* to such non-psychiatric expert witnesses").

Petitioner has not shown that he had a clearly-established right to the appointment of a non-psychiatric expert.  Moreover, even if such a right existed, Petitioner has not shown how denial of either an expert in typewriter comparison or a handwriting expert prejudiced him at trial, particularly because the prosecution did not attempt to link the extortion letters to Petitioner's typewriter, and, as the trial court observed, there was no indication that a handwriting expert would have helped the defense.  Accordingly, Petitioner is not entitled to habeas relief on this ground.

## B.    Exclusion of MDOC Witnesses

The court of appeals concluded that the trial court did not err in excluding the MDOC witnesses Petitioner sought to call:

> Defendant's witness list included 18 MDOC officers who worked at the Marquette Prison; the list included seven "food stewards," three people who worked as medical or dental personnel, and one prisoner. The prosecution filed a motion in limine, requesting that the defense be prohibited from calling these witnesses. The trial court granted plaintiff's motion in limine with a few exceptions:
>
>> Now, I'm going to grant the motion in limine that—with the exception of Sergeant Buckner, and any other MDOC employees that are identified in Detective Lieutenant Johnston's report. Other than those officers or employees that are identified in the report, as to the remainder of the list of MDOC employees I've listed, I'm going to grant the People's motion in limine that such witnesses not be called unless the defendant makes some pretrial proffer in writing of the expected testimony of such witnesses and the relevancy of that testimony to the issues in this case, and in light of my ruling on the motion in limine, that the underlying conduct of the corrections

14

officer, if any exist that would be a law or rule violation, is not relevant to a jury determination. If, however, any of these proposed MDOC witnesses contain exculpatory evidence as to the defendant not being the author of this correspondence, or somehow or another would provide and assist the defense in his defendant [sic] other than the underlying conduct issue of which the jury is not going to hear any evidence, that these witnesses are not going to be—that the Court will not have them called or subpoenaed unless there is an offer of proof showing some relevancy to the issues the jury has to determine in this case.

Defendant's contention that the trial court abused its discretion is without merit. Defendant argues the trial court mistakenly assumed that the only reason for calling these witnesses would be to prove the truth of the underlying accusation as some kind of "legal defense" to the charge of extortion.  However, the record reveals otherwise.  It did agree that the "truth" of the accusation is not a defense to extortion, and that evidence that the underlying accusation was true would not be admissible for such a purpose.  However, the trial court also clearly understood and addressed defendant's argument that this evidence was relevant to show that there was some type of plot against defendant:

> Now, I understand, in part from earlier arguments of counsel and some of the pro se communications of defendant, that Mr. Martin's position is that he is not the author of these items of correspondence, that somebody else is the author, and he's somehow or another being framed, and that the truth of the underlying offense would go to the motivation I suppose of those who are trying to frame him. On these discovery motions, I see no evidence of that, and to open up that line of inquiry, either argument, or examination of witnesses, or cross-examination of witnesses at trial, on the basis of unsigned and anonymous kites that, as Inspector Marshall said, go on all the time within prison, would lead us to a trial of innuendo and rumor, and as it relates to people employed in their work as Corrections Officers, and would have no relevancy that I can see as to whether or not the elements of the statute are proven up, and whether or not the defendant is the author of these items of correspondence.

The trial court did not abuse its discretion when it denied defendant's request for a court-appointed typewriter expert and court-appointed handwriting expert. The trial court also did not abuse its discretion when it denied defendant's request to call a number of MDOC witnesses.

(ECF No. 11-2 at PageID.156–57.)

Petitioner fails to show that the trial court's exclusion of his witnesses impaired his ability to present a complete defense.  The trial court appropriately determined that Petitioner's proffered

witnesses would not have provided relevant testimony.  Even so, it left the door open for Petitioner to provide an offer of proof that his witnesses had exculpatory evidence or could otherwise offer testimony that was relevant to the defense.  Accordingly, the court of appeals' rejection of Petitioner's claim is neither contrary to, not an unreasonable application of, clearly established federal law.

## V.    Sentencing—Inaccurate Information (Issues III and IV)

Petitioner asserts that the trial court relied upon inaccurate information in imposing his sentence and incorrectly scored offense variable (OV) 19, which requires a threat to the security of a penal institution, by assigning Petitioner 25 points.  Petitioner argued that the trial court erred in making a sentencing finding that the offense conduct satisfied OV 19 because the jury was never asked to determine the issue beyond a reasonable doubt and a threat to the security of a penal institution is not an element of the crime of extortion.  Petitioner further argued that there was no evidence to support the trial court's finding.  (ECF No. 11-2 at PageID.225–231.)  The Michigan Court of Appeals rejected the argument, reasoning:

> Contrary to defendant's assertions, the facts used in scoring the offense variables do not need to be proven beyond a reasonable doubt before the jury.  "While judicial fact-finding in scoring the sentencing guidelines produces a recommended range for the minimum sentence of an indeterminate sentence, the maximum of which is set by law, [*People v.*] *Drohan*, 475 Mich. [140] at 164, 715 NW2d 778 [2006], it does not establish a mandatory minimum; therefore, the exercise of judicial discretion guided by the sentencing guidelines scored through judicial fact-finding does not violate due process or the Sixth Amendment right to a jury trial."  *People v. Herron*, 303 Mich. App 392, 403–404; 845 NW2d 533 (2013), application held in abeyance —— Mich. ——; 846 NW2d 924 (2014).

(Mich. Ct. App. Op., ECF No. 11-2 at PageID.158.)

Petitioner argues that the trial court judge violated his Sixth Amendment right to a trial by jury and his Fourteenth Amendment right to due process by using, to enhance his sentence, facts that Petitioner had not admitted and that a jury had not found beyond a reasonable doubt.  Petitioner

bases his argument on the line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Ring v. Arizona*, 536 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013).  In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490.  *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence.  In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding.  The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, reiterating the rule that any fact that increases the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt."  *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).

Subsequently, in *Alleyne*, 570 U.S. 99, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences.  In *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), the Michigan Supreme Court held that, under *Alleyne*, the Michigan sentencing guidelines scheme violates the Sixth Amendment because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables [] that *mandatorily* increase the floor of the guidelines minimum sentence range."  *Lockridge*, 870 N.W.2d at 506 (emphasis in original).  The court's remedy for the unconstitutionality of the Michigan guidelines was to sever and strike the mandatory component of the guidelines and make the guidelines advisory only.  *Id.* at 520-21 (relying on *Booker,* 543 U.S. at 264-265 (holding that the remedy for the unconstitutionality of the mandatory federal sentencing guidelines was to sever

only the mandatory component, still requiring courts to consider the guidelines, but making them advisory and subject to review for reasonableness)).

On August 24, 2018, the Sixth Circuit agreed with the *Lockridge* analysis. *Robinson v. Woods*, 901 F.3d 710 (6th Cir. 2018). The *Robinson* court held that the Supreme Court's decision in *Alleyne* clearly established that Michigan's mandatory minimum sentencing scheme was unconstitutional. *Robinson*, 901 F.3d at 714. The court reasoned that, "[a]t bottom, Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences." *Id.* at 716 (citing *Alleyne*, 570 U.S. at 111-12).

In the instant case, Petitioner was sentenced on November 27, 2013, five months after the Supreme Court decided *Alleyne*. *Alleyne* therefore was clearly established at the time of Petitioner's sentence. Application of *Alleyne* would alter the result in the instant case. The trial court did not indicate that it considered the guidelines only advisory. Absent the judicially-found facts, Petitioner's sentencing guideline range would have been 51 to 106 months, rather than 78 months to 162 months—the range used at Petitioner's sentencing. Therefore, the undersigned recommends that Petitioner is entitled to habeas relief, in part, on his sentencing claim because "*Alleyne*'s holding rendered Michigan's then-mandatory sentencing regime unconstitutional. . . ." *Id.* at 715. Accordingly, the Court should order the State to conduct a sentencing as required by the Sixth Circuit' decision in *Robinson*. *Id.* at 718.

Petitioner also argues that the trial court erred in calculating his sentencing guideline range in including convictions that were over ten years old that Petitioner received as a juvenile. This argument fails to state a viable habeas claim. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).

A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases).  The federal courts have no power to intervene because of a perceived error of state law.  *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings.  *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

A sentence may violate federal due process if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct. *Townsend v. Burke*, 334 U.S. 736, 741 (1948) (stating that "[i]t is not the duration or severity of this sentence that renders it constitutionally invalid; it is the careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct by the services which counsel would provide, that renders the procedings lacking in due process").  Here, Petitioner makes no such showing.  The trial court held a sentencing hearing at which Petitioner had the opportunity to contest the sentencing decision.  In fact, Petitioner's counsel made several challenges or comments to the presentence report during the hearing.

## VI.    Issues V–VII

Respondent argues that the Court should dispose of Petitioner's fifth, sixth, and seventh claims on the ground of procedural default.  Respondent claims that the court of appeals found that Petitioner failed to develop the arguments he raised in his pro se appellate brief.  The Sixth Circuit has noted that "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  Moreover, although the court of appeals cited a ground for procedural default, it addressed the merits by attempting to discern Petitioner's claims. Because the court of appeals did not enforce the procedural bar, *see Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (holding that the state court must actually enforce the state procedural sanction), the undersigned will address the merits.

### A.    Prosecutorial Misconduct

The Michigan Court of Appeals construed Petitioner's fifth issue as a claim of prosecutorial error or misconduct.  After reciting Petitioner's argument, the court said that it was "at a loss for how to analyze this alleged claim of error" because Petitioner's brief "provide[d] no guidance." (ECF No. 11-2 at PageID.158.)

In order for a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether

the claimed misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11-12 (1985).  The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel, and whether a curative instruction was given by the court. *See id.* at 12-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

Petitioner alleged a variety of misconduct not only by the prosecutor but also by the trial judge.  However, Petitioner failed to provide a factual basis for his claims and, therefore, they were properly rejected.  Here, Petitioner continues to offer the same unsupported accusations but fails to show that he is entitled to relief on this claim.  Petitioner fails to demonstrate that he is entitled to relief.

## B.    Jury Instructions

The court of appeals construed Petitioner's sixth claim as a challenge to the trial court's instruction in response to the jury's question about the date of the shakedown and when Petitioner's typewriter was confiscated and their request for Marshall's testimony.  The court of appeals summarized the circumstances as follows:

> During deliberations, the jury sent a note to the trial court that stated "we would like the date of the shakedown and when they took the typewriter" and "Marshall's testimony."  In response, the trial court allowed Marshall's testimony to be played back for the jury.  As to when the shakedown and confiscation occurred, the court, the prosecution, and defendant's counsel recognized that defendant testified that his typewriter was taken on April 27th, and that either Marshall or Johnston testified that the typewriter was taken on May 2nd or 3rd.  Given this conflict in the testimony, the court decided that it would be improper to provide a definitive answer to the question, and instead instructed the jury that he could not answer with a specific date and that the jury was to "rely on your own individual memories of the trial."

(ECF No. 11-2 at PageID.159.)  The court of appeals then held:

> Contrary to defendant's assertions, the judge did not "foreclose the possibility of the jury rehearing the testimony in order to help them remember and understand it and to aid them in resolving [ ] disagreements ..."  The jury did not request when

21

> Marshall said he confiscated the typewriter; instead, they asked for "the date of the shakedown and when they took the typewriter."    The trial court correctly recognized that it could not answer that question because there was conflicting testimony as to when these events occurred.  The "important information" (when Marshall said he confiscated the typewriter) was not kept from the jury by the trial court's ruling, because Marshall's testimony containing this information was in fact replayed for the jury.

(*Id.*)

The Supreme Court repeatedly has rebuffed due process challenges to erroneous jury instructions.  *Waddington v. Sarausad*, 555 U.S. 179, 192-94 (2009); *Henderson v. Kibbe*, 431 U.S. 145, 152 (1977); *Levinston v. Warden*, No. 17-3167, slip op. at 5 (6th Cir. May 30, 2018). Typically, a claim that a trial court gave an improper jury instruction is not cognizable on habeas review.  Instead, Petitioner must show that the erroneous instruction so infected the entire trial that the resulting conviction violates due process.  *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).  *See also Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (erroneous jury instructions may not serve as the basis for habeas relief unless they have so infused the trial with unfairness as to deny due process of law); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).  If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law.  *Id.*

Here Petitioner fails to meet his difficult burden of demonstrating a due process violation. The trial court's instruction did not infuse unfairness into the proceeding, but instead was a reasonable directive to the jurors to rely on their memories of the evidence, particularly where there was no definitive answer as to when the shakedown occurred and Petitioner's typewriter was confiscated.  Petitioner is not entitled to habeas relief on this claim.

### C.    Ineffective Assistance of Counsel

The court of appeals construed Petitioner's seventh claim as one for ineffective assistance of counsel but rejected it because it found that counsel made no errors.  (ECF No. 11-2 at

PageID.159.)  The court reasoned that "[D]efense counsel is not required to make frivolous or meritless motions . . . or objections.  *People v. Knapp*, 244 Mich App 361, 386; 624 NW2d 227 (2001)."  (*Id.*)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, considering the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court recently has observed, while "'[s]urmounting *Strickland*'s high bar is never an easy task,' . . . [e]stablishing that a state court's application was unreasonable under § 2254(d) is all the more difficult."  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 1485 (2010)).  Because the standards under both *Strickland* and Section 2254(d) are highly deferential, "when the two apply in tandem,

review is 'doubly' so." *Harrington*, 562 U.S. at 105 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).  In those circumstances, "[t]he question [before the habeas court] is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*

Petitioner fails to articulate how his counsel's performance was deficient.  As the court of appeals acknowledged, "[c]ounsel [i]s not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel."  *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). The record shows that trial counsel was familiar with the facts of Petitioner's case, thoroughly and competently examined the witnesses, presented a defense, and argued vigorously on Petitioner's behalf to create reasonable doubt regarding his guilt.  Petitioner fails to show that the court of appeals' application of the *Strickland* standard was contrary to, or an unreasonable application of, clearly established federal law or that the court unreasonably determined the facts.

Accordingly, Petitioner is not entitled to relief on this claim.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would

find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims (other than the *Alleyne* sentencing claim) would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Recommended Disposition

For the foregoing reasons, I recommend that the Court conditionally grant in part the habeas petition as to the *Alleyne* sentencing claim but deny the remaining claims. I further recommend that, if the State fails to re-sentence Petitioner within 120 days of the Court's order, Petitioner may seek an unconditional writ vacating his extortion conviction. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated: August 14, 2020

       /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).